**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

EMILY BARR, CAROLYN EARL,
RITA HANNA, MICHAEL WEBSTER

    Plaintiffs,

v.

COREWELL HEALTH D/B/A BEAUMONT
HEALTH,

    Defendants.

Case No.

Hon.

---

Noah S. Hurwitz (P74063)
Colin H. Wilkin (P86243)
HURWITZ LAW PLLC
Attorneys for Plaintiff
340 Beakes St., Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
colin@hurwitzlaw.com

---

**COMPLAINT AND JURY DEMAND**

NOW COME Plaintiffs Emily Barr, Carolyn Earl, Rita Hanna and Michael Webster ("Plaintiffs"), by and through their undersigned attorneys, and state the following:

**INTRODUCTION**

1. Corewell Health d/b/a Beaumont Health ("Defendant") deliberately flouted Title VII of the Civil Rights Act of 1964 ("Title VII") and Michigan's Elliott-

1

Larsen Civil Rights Act ("ELCRA") by denying Plaintiffs' religious accommodation requests to be exempt from Defendant's COVID-19 vaccine policy and then terminated Plaintiffs despite the Equal Employment Opportunity Commission ("EEOC") telling employers to "ordinarily assume that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance."  Defendant ignored the EEOC's warning that employers "should not assume that an employee is insincere simply because some of the employee's practices deviate from the commonly followed tenets of the employee's religion, or because the employee adheres to some common practices but not others" and terminated Plaintiffs based on Defendant's subjective standard of religiosity.

## PARTIES, JURISDICTION, AND VENUE

2. Emily Barr resides in Chesterfield, Michigan

3. Carolyn Earl resides in Woodhaven, Michigan.

4. Rita Hanna resides in Rochester Hills, Michigan.

5. Michael Webster resides in Clarkston, Michigan.

6. Defendant Corewell Health d/b/a Beaumont Health, is a domestic for-profit corporation incorporated in Southfield, Michigan.

7. The Eastern District of Michigan has jurisdiction over the Title VII of the Civil Rights Act of 1964 ("Title VII") claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the Elliott-Larsen Civil Rights Act ("ELCRA")

claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)(1) because it is the judicial district in which Defendant is incorporated and where the incidents described in this Complaint took place.

9. Plaintiffs Earl, Hanna and Webster filed discrimination charges with the U.S. Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue from the EEOC. Plaintiff Barr has not received a "right to sue' letter from the EEOC at this time, but her Title VII claims are properly brought before this Court pursuant to Title VII's single filing (or "piggybacking") rule.

## FACTUAL ALLEGATIONS

### Defendant's Mandatory Vaccine Policy

10. Defendant announced its COVID-19 vaccination mandate on July 28, 2021.

11. The deadline for employees to receive the first dose of the vaccine was October 20, 2021.

### Plaintiffs' Religious Accommodation Requests

12. Plaintiff Barr worked as a Registered Nurse for Defendant from September 2017 until her termination in October 2021.

13. Plaintiff Barr submitted a religious accommodation request on September 3, 2021 and stated that her "body is a temple" and that she had "become

3

a lot closer to God" during the pandemic. Plaintiff Barr insisted, "this vaccine is being forced upon me and my religion does not believe in anything being forced on one's body."

14. On October 4, 2021, Plaintiff Barr submitted an even more detailed religious accommodation request, citing her refusal to put something developed with "fetal cells" into her body.

15. Defendant denied Plaintiff Barr's religious accommodation request on October 14, 2021.

16. On October 14, 2021, Plaintiff Barr protested her religious accommodation denial when she learned that she was denied, but "most everyone else on our unit was approved."

17. Plaintiff Barr was terminated 28 days later on November 11, 2021, but Defendant erroneously called it a voluntarily resignation.

18. Plaintiff Earl completed the "Request for Religious Exemption from COVID-19 Vaccination" form before the deadline.

19. Defendant denied Plaintiff Earl's request without explanation.

20. On October 19, 2021, Plaintiff Earl was suspended without pay.

21. On November 16, 2021, Defendant terminated Plaintiff Earl as a direct and proximate result of refusing to compromise on her religious beliefs.

22. On September 5, 2021, Plaintiff Hanna completed the "Request for

Religious Exemption from COVID-19 Vaccination" form.

23. Plaintiff Hanna included a signed letter from her parish, which stated:

> I met with one of my parishioners in regard to the mandatory vaccines required by Beaumont Royal Oak. Our Catholic faith required each baptized Catholic to use their conscience when making decisions. Created in God's image, we have been endowed an intellect, which is directed toward what is trye, and a will, which is directed toward what is good. Although the Church does not oppose the vaccine, the Church does opposed being forced to take the vaccine…Rita Hanna has expressed that since she has been created as a rational being by Almighty God, she has received the dignity and right to exercise such will according to her conscience.

24. Plaintiff Hanna's accommodation request was denied on September 27, 2021, despite the detailed note from Plaintiff Hanna's parish and her assertion that she has been a Catholic for the past 33 years.

25. Defendant merely claimed that Plaintiff Hanna's request "does not meet the established criteria for an exemption."

26. On September 4, 2021, Plaintiff Webster completed the "Request for Religious Exemption from COVID-19 Vaccination" form.

27. Plaintiff Webster stated, in pertinent part:

> I trust in God for my safety and protection. I have attended Catholic Church my whole life…The Holy Spirit is instructing me to not receive this vaccine…Through recent years, I have deepened my relationship with God…My God has been my protector.

28. Defendant denied Plaintiff Webster's request later that month and no

5

reason was given for his denial.

29. Plaintiff Webster emailed his appeal on September 29, 2021, stating:

> I am a Catholic or more broadly a Christian…I affirm that this is a deeply held religious belief of mine, pursuant to my Christian faith, that my body is a temple of the Holy Spirit. It is my God-given responsibility and requirement to protect the physical and spiritual integrity of my body against potentially unclean food and injection.

30. Plaintiff Webster did not receive a response.

31. On October 12, 2021, Plaintiff Webster emailed Defendant: "I am requesting a detailed response on why my exemption was denied, twice. I request the criteria information and what criteria I did meet. Please get back with me as soon as possible.

32. Again, Plaintiff Webster received no response.

33. Defendant terminated Plaintiff Webster on October 19, 2021.

34. But then Plaintiff Webster was encouraged to abandon his religious beliefs by receiving the first dose of the vaccine by an extended deadline of November 16, 2021.

35. As a direct and proximate result of refusing to do so, Plaintiff Webster was terminated on November 16, 2021.

36. Defendant never discussed reasonable accommodations, such as testing or wearing a mask, in the spirit of "bilateral cooperation." *Ansonia Bd. of Educ. v. Philabrook,* 479 U.S. 60, 69, (1986).

6

37. On September 28, 2021, Plaintiff Hanna emailed her appeal, stating:

> Being a Catholic, I have held on to my faith very closely for my entire life. As a young woman of childbearing years, at this time in my life, I feel uncomfortable and sincerely afraid to receive the vaccine…My Catholic faith requires each baptized Christian to use their conscience when making decisions. As a Beaumont employee of almost 9 years, I value the hospital and staff tremendously. I feel honored to work for an organization who values their team members. As a valued employee and compassionate supervisor, I would ask to please consider my exemption.

38. Plaintiff Hanna did not receive a response, so she followed up with Defendant on September 30, 2021.

39. On October 1, 2021, the department of "Employee Health and Safety" responded, stating that the documentation she provided "does not establish a conflict between the vaccine requirement and [her] stated religious beliefs."

40. Plaintiff Hanna was subsequently placed on medical leave by her physician beginning October 4, 2021.

41. Plaintiff Hanna was cleared to return to work on December 6, 2021, but Defendant denied her return to work date.

42. On December 15, 2021, Defendant terminated Plaintiff Hanna as a direct and proximate result of refusing to compromise on her religious beliefs.

43. Plaintiffs were not recognized for their years or service, or for the fact that they risked their lives as frontline workers during the pandemic.

44. Under the law, religious practices "*include moral or ethical beliefs as*

7

*to what is right and wrong* which are sincerely held with the strength of traditional religious views." 29 C.F.R. § 1605.1.

45. Defendant assumed insincerity when the opposite should have been true – see Guidance, *supra* ("*[T]he employer should ordinarily assume* that an employee's request for religious accommodation is based on sincerely held religious belief, practice, or observance.")

46. The fact that an employee submits to some vaccines but not others in no way negates the sincerity of his or her beliefs. See *id.* ("[E]mployees need not be scrupulous in their observance."); *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 714 (1981) (holding that religious beliefs "need not be acceptable, logical, consistent, or comprehensible to others" to merit protection).

47. Plaintiffs worked safely and successfully for Defendant prior to its vaccine mandate.

48. There are a host of reasonable accommodations that Defendant failed to consider.

49. Plaintiffs could have tested daily to confirm whether she was not ill.

50. Plaintiffs could have engaged in frequent sanitizing and disinfecting.

51. Plaintiffs could have worn gloves and respirators in the workplace.

52. Defendant made employees work in-person throughout the pandemic. Before any vaccine was developed, the following safety measures were deemed

8

sufficiently effective to protect employees, patients, and their loved ones: daily testing, enhanced sanitation measures including handwashing and disinfecting, gloves and respirators, and social distancing whenever practicable.

53. Examples of reasonable accommodations include wearing a mask, working "at a social distance" from others, working a modified shift, getting tested, and being given the opportunity to telework. U.S. EQUAL EMPL. OPPORTUNITY COMM'N, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (May 28, 2021).

54. "If the employer denies the employee's proposed accommodation, the employer should explain to the employee why the preferred accommodation is not being granted." *Id*.

55. Defendant did not explain to Plaintiffs why their accommodation requests could not be granted.

56. Generally, the sincerity of an employee's religious beliefs "is not open to question." *United States v Seeger*, 380 U.S. 163, 185 (1965). Title VII's statutory definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

57. Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986). "Bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion

9

and the exigencies of the employer's business." *Id.*

58. Defendant's accommodation process was arbitrary.

59. Defendant did not explore available reasonable alternatives to the vaccine.

### Defendant Did Not Base Its Decision on Undue Hardship, Nor Could It Establish Undue Hardship

60. The prohibition against religious discrimination imposes a "duty" on employers to accommodate sincere religious beliefs, absent "undue hardship." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977).

61. The employer, not the employee, bears the burden of showing "that it is unable to reasonably accommodate the employee's religious beliefs without incurring undue hardship." *McDaniel v. Essex Intern., Inc.*, 571 F.2d 338, 341 (6th Cir. 1978).

62. An employer does not satisfy its burden of proving undue hardship "merely by showing that an accommodation would be bothersome to administer or disruptive of the operating routine." *Draper v. United States Pipe & Foundry Co.*, 527 F.2d 515, 520 (6th Cir. 1975). The operative word is "undue," meaning that "something greater" than a mere hardship is required. *Id.*

63. Here, Defendant cannot satisfy its burden of proving undue hardship.

64. Defendant's allegations are based in religious animus rather than science.

65. Plaintiffs were not requesting a license to roam about uninhibited without sanitizing or wearing any personal protective equipment ("PPE"), as though no health threat existed.

66. Plaintiffs were more than willing to comply with all safety protocols.

67. Any allegation of undue hardship lack scientific backing and, in fact, directly contravene scientific evidence supporting the effectiveness of practices such as handwashing and wearing respirators in preventing infection and death. Stella Talic et al., *Effectiveness of public health measures in reducing the incidence of covid-19, SARS-CoV-2 transmission, and covid-19 mortality: systematic review and meta-analysis*, Brit. Med. J (2021).

68. Plaintiffs had been engaging in these alternative practices, which had been deemed effective throughout the pandemic for approximately eighteen (18) months before the mandate.

## COUNT I
## VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.
## RELIGIOUS DISCRIMINATION–FAILURE TO ACCOMMODATE

69. Plaintiffs restate the foregoing paragraphs as set forth fully herein.

70. Title VII prohibits an employer from discriminating against an employee "because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Title VII's definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

71. Plaintiffs can establish *prima facie* cases of discrimination by showing (1) they hold sincere religious beliefs that conflict with an employment requirement; (2) they informed their employer of same; and (3) they were disciplined for failing to comply with the employment requirement." *Yeager v. FirstEnergy Generation Corp*, 777 F.3d 362, 363 (6th Cir. 2015).

72. Plaintiffs holds sincere religious beliefs that conflict with Defendant's vaccine mandate.

73. Plaintiffs informed Defendant of the same.

74. Plaintiffs were disciplined for failing to comply with the vaccine mandate.

75. Defendant evaded any sort of "bilateral cooperation," *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

76. Defendant could have instituted multiple reasonable accommodations without undue hardship, including sanitizing, disinfecting, handwashing, respirator-wearing, and regular testing.

77. Defendant never explained why Plaintiffs could not be accommodated.

78. Defendant never explained why no accommodations could have worked.

79. Due to her termination, Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation,

embarrassment, and the physical effects associated therewith; and Plaintiffs will continue to suffer in the future.

80. Plaintiffs have been denied employment, placed in financial distress, suffered a loss of earnings and benefits, suffered a loss of health insurance coverage, and suffered a loss of and impairment of their earning capacity and ability to work.

81. Defendant's actions were intentional and/or reckless.

## COUNT II
## VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.
## RELIGIOUS DISCRIMINATION–DISPARATE TREATMENT

82. Plaintiffs restate the foregoing paragraphs as set forth fully herein.

83. "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) they were a member of a protected class, (2) they experienced an adverse employment action (3) they were qualified for the position, and (4) they were replaced by a person outside of the protected class or were treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

84. Plaintiffs espoused religious beliefs and are therefore members of a protected class.

85. Defendant directly discriminated against Plaintiffs by terminating them after they stated their sincerely held religious beliefs that conflicted with

13

Defendant's subjected standard of religiosity.

86. Defendant allowed other unvaccinated employees without Plaintiffs' same religious beliefs to be exempted from Defendant's vaccine mandate policy.

87. It is undisputed that Plaintiffs were qualified for their positions.

88. Plaintiffs were treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite not being vaccinated.

89. Plaintiffs were terminated and replaced with employees of different religious beliefs.

90. Plaintiffs suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests, and will so suffer in the future.

**COUNT III**
**VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT ("ELCRA")**
**DISPARATE TREATMENT AND INTENTIONAL DISCRIMINATION**

91. Plaintiffs restate the foregoing paragraphs as set forth fully herein.

92. Plaintiffs hold sincere religious beliefs that conflict with Defendant's COVID-19 vaccine mandate.

93. Plaintiffs informed Defendant how these sincerely held religious beliefs conflicted with Defendant's COVID-19 vaccine mandate.

94. "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a *prima facie* case of indirect discrimination by showing that the employee (1) was a member of a protected class; (2) experienced an adverse employment action; (3) was qualified for the position; and (4) was replaced by a person outside of the protected class or that the employee was treated differently than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

95. Defendant directly discriminated against Plaintiffs based on termination after they espoused sincerely held religious beliefs that conflicted with Defendant's policy.

96. Defendant allowed other unvaccinated employees without Plaintiffs' religious beliefs to be exempted from Defendant's vaccine mandate policy.

97. Plaintiffs' sincerely held religious beliefs qualify them as members of a protected class.

98. Plaintiffs were qualified for the position.

99. Plaintiffs were treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite being unvaccinated.

100. Plaintiffs were terminated and replaced with employees of different

religious beliefs.

101. Defendant also terminated Plaintiffs based on Defendant's own subjective standard of religiosity, thus directly discriminating against Plaintiffs' unique sincerely held spiritual beliefs.

102. EEOC Guidance states that ("[t]he definition of 'religion' under Title VII protects both traditional and nontraditional religious beliefs . . . including those that may be unfamiliar to employers.")

103. The law on religious discrimination states that religious beliefs need not be "acceptable, logical, consistent or comprehensible to others" and the law "leaves little room for a party to challenge the religious nature of an employee's professed beliefs."). *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002).

104. Defendant defied the law when it determined that some religious beliefs of its employees were valid and while others were bogus.

105. In discovery, Plaintiffs will be able to investigate which types of religious beliefs Defendant found were acceptable and which types of religious beliefs Defendant discriminated against, thereby establishing evidence probative of discriminatory intent.

106. Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical

effects associated therewith because of the termination and will so suffer in the future.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests the following relief:

a. Compensatory damages for monetary and non-monetary loss;

b. Exemplary and punitive damages;

c. Prejudgment interest;

d. Reasonable attorney's fees; and

e. Such other relief as in law or equity may pertain.

<br>

Respectfully Submitted,
HURWITZ LAW, PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorney for Plaintiffs
340 Beakes St., Suite 125
Ann Arbor, MI 48103
(844) 487-9489
Dated: April 7, 2023            noah@hurwitzlaw.com

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

EMILY BARR, CAROLYN EARL,
RITA HANNA, MICHAEL WEBSTER

   Case No.

 Plaintiffs,

   Hon.

v.

COREWELL HEALTH D/B/A BEAUMONT
HEALTH,

 Defendants.

---

Noah S. Hurwitz (P74063)
Colin H. Wilkin (P86243)
HURWITZ LAW PLLC
Attorneys for Plaintiffs
340 Beakes St., Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
colin@hurwitzlaw.com

---

## DEMAND FOR TRIAL BY JURY

Plaintiffs, by and through their attorneys Hurwitz Law, PLLC, hereby demand a trial by jury, for all issues so triable.

    Respectfully Submitted,
    HURWITZ LAW, PLLC

    */s/ Noah S. Hurwitz*
    Noah Hurwitz (P74063)
    Attorney for Plaintiffs
    noah@hurwitzlaw.com

Dated: April 7, 2023