## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EMILY BARR, CAROLYN EARL,
RITA HANNA, MICHAEL WEBSTER,             Case No. 23-cv-10808

        Plaintiffs,                Hon.  Jonathan J.C. Grey

v.                                       Magistrate Judge David R. Grand

COREWELL HEALTH D/B/A
BEAUMONT HEALTH,

        Defendant.

_____

**Defendant's Motion for Judgment on the Pleadings**

Defendant Corewell Health, by its counsel, Kienbaum Hardy Viviano Pelton & Forrest, P.L.C., moves this Court under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings as to each of Plaintiffs' claims, and in support says:

1.      On April 7, 2023, Plaintiffs Emily Barr, Carolyn Earl, Rita Hanna, and Michael Webster sued their former employer Corewell Health (Corewell was known as Beaumont Health at the time of the events described in Plaintiffs' complaint). They allege religious discrimination because their requests for "religious" exemptions from Corewell's COVID-19 vaccine requirements were denied, leading to their subsequent departure from Corewell for failure to comply with policy.

2.      Plaintiffs—all of whom worked directly with Beaumont patients during the height of the pandemic—made their accommodation requests in writing. But Plaintiffs (all of whom admitted to being vaccinated before the COVID pandemic) made accommodation requests that did not assert any religious belief opposing vaccination. Rather, all asserted that their religion gives them a *personal* right to pick and choose what they put in their body. But as discussed in Corewell's accompanying brief, courts have routinely held that these sorts of requests do not satisfy the first prong of a religious accommodation claim—an asserted belief that is objectively a "religious" one.[1]

---

[1] Evidence that Plaintiffs' asserted beliefs are window-dressing for their political or "scientific" objections to the COVID-19 vaccine would provide independent grounds for relief—*i.e.* that the Plaintiffs have not asserted "sincere" beliefs. *See*

3.  Plaintiffs have also repackaged their accommodation claim as "disparate treatment." However, courts have routinely rejected efforts to recast failure-to-accommodate claims as disparate treatment claims, and dismissed such claims on the pleadings.

4.  Corewell now moves for judgment on the pleadings.

5.  Corewell sought Plaintiffs' concurrence in this request for relief on November 17, 2023. Plaintiffs denied concurrence, requiring this motion.

6.  For these reasons and those explained in the accompanying brief, Corewell requests that this Court grant it judgment on the pleadings.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.

By: */s/Thomas J. Davis*
    Eric J. Pelton (P40635)
    Thomas J. Davis (P78626)
Attorneys for Defendant
280 N. Old Woodward Ave., Ste. 400
Birmingham, Michigan 48009
(248) 645-0000
epelton@khvpf.com
tdavis@khvpf.com

Dated:  November 21, 2023

---

*United States v Seeger*, 380 U.S. 163, 185 (1965) (in religious accommodation cases, there is always a "significant question whether [the belief] is 'truly held.' This is the threshold question of sincerity which must be resolved in every case."). As sincerity would require factual development, it is not addressed in this motion.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

EMILY BARR, CAROLYN EARL,
RITA HANNA, MICHAEL WEBSTER,                Case No. 23-cv-10808

        Plaintiffs,                           Hon.  Jonathan J.C. Grey

v.                                         Magistrate Judge David R. Grand

COREWELL HEALTH D/B/A
BEAUMONT HEALTH,

        Defendant.

_____

**Defendant's Brief in Support of**
**Motion for Judgment on the Pleadings**

# Table of Contents

<u>Page</u>

Index of Authorities ................................................................................ iii

Issues Presented .................................................................................... vi

Introduction ............................................................................................1

Statement of Facts ..................................................................................2

    I.    Pursuant to government mandate, Corewell announces its policy that employees must be vaccinated against COVID-19. ...........2

    II.    Plaintiffs submit accommodation requests............................................3

        A.    Plaintiff Carolyn Earl ..................................................................3

        B.    Plaintiff Rita Hanna ....................................................................4

        C.    Plaintiff Michael Webster ...........................................................6

        D.    Plaintiff Emily Barr.....................................................................7

    III.    Hanna, Webster, and Earl file EEOC charges; Barr does not..............9

    IV.    Plaintiffs file suit, alleging facts showing a rejection of accommodation requests followed by termination for failing to follow generally-applicable policy.......................................................9

Argument.................................................................................................10

    I.    Corewell is entitled to judgment on the pleadings because Plaintiffs' accommodation requests, on their face, do not identify religious objections to vaccination. ......................................11

        A.    Carolyn Earl. ..............................................................................14

        B.    Michael Webster. .......................................................................15

        C.    Rita Hanna..................................................................................16

        D.    Emily Barr..................................................................................16

II.     Barr's Title VII claim also fails because she did not file an
        EEOC charge, and thus has not exhausted administrative
        remedies...............................................................................................18

III.    Plaintiff's disparate treatment counts—which is an obvious
        attempt to repackage the failure-to-accommodate claim in
        alternative language—fails to state a claim. .......................................21

Conclusion ...............................................................................................24

# Index of Authorities

Page

## Cases

*Africa v. Pennsylvania*,
662 F.2d 1025 (3d Cir. 1981) ..................................................................12

*Anders v. Cuevas*,
984 F.3d 1166 (6th Cir. 2021) ...............................................................11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...............................................................................11

*Bovee v. Coopers & Lybrand C.P.A.*,
272 F.3d 356 (6th Cir. 2001) .................................................................11

*Brox v. Hole*,
590 F. Supp. 3d 359 (D. Mass. 2022)....................................................13

*Clear Sky Car Wash, LLC v. City of Chesapeake, Va.*,
910 F. Supp. 2d 861 (E.D. Va. 2012) ....................................................19

*Collias v. MotorCity Casino*,
2023 WL 6406220 (E.D. Mich. Sept. 30, 2023) .......................... 20, 22

DiFranco v. City of Chicago,
589 F. Supp. 3d 909 (N.D. Ill. 2022).....................................................21

*Dorr v. First Ky. Nat'l Corp.*, No. 84-5067,
1986 WL 398289 (6th Cir. July 17, 1986) ............................................12

*Elec. Merch. Sys. LLC v. Gaal*,
58 F.4th 877 (6th Cir. 2023)..................................................................10

*Ellison v. Inova Health Care Servs.*, No. 123CV00132MSNLRV,
2023 WL 6038016 (E.D. Va. Sept. 14, 2023).......................................17

*Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*,
877 F.3d 487 (3d Cir. 2017) ..................................................................12

*Finkbeiner v. Geisinger Clinic*,
    623 F. Supp. 3d 458 (M.D. Pa. 2022) ...................................................13

*Friend v. Astrazeneca Pharmaceuticals, LP*, No. 22-cv-03308,
    2023 WL 3390820 (D. Md. May 11, 2023) ..........................................13

*Gardner-Alfred v. Fed. Rsrv. Bank of New York*,
    2023 WL 6214863 (S.D.N.Y. Sept. 25, 2023) ......................................17

*Howlett v. Holiday Inns, Inc.*,
    49 F.3d 189 (6th Cir. 1995) ........................................................... 18, 19

*Hues v. Fed. Ins.*, No. 2:15-CV-84,
    2015 WL 6107644 (S.D. Ohio Oct. 16, 2015) ....................................19

*Hussein v. The Waldorf-Astoria*,
    134 F. Supp. 2d 591 (S.D.N.Y. 2001) .................................................12

*In re Matthew M.*,
    88 Cal. App. 5th 1186 (2023) .............................................................17

*Leta v. Hamilton Cnty. Dep't of Job & Fam. Servs.*, No. 1:22-CV-511,
    2023 WL 2788833 (S.D. Ohio Apr. 5, 2023) .....................................14

*Lucky v. COBX, Co.*,
    2023 WL 3359607 (E.D. Mich. May 10, 2023) .............................. 22, 23

*Lucky v. Landmark Med. of Michigan, P.C.*, No. 23-CV-11004,
    2023 WL 7095085 (E.D. Mich. Oct. 26, 2023) ..................................14

*McGrath v. Liberty Life Assurance Co. of Bos.*, No. 17-CV-03095,
    2018 WL 1547103 (C.D. Ill. Mar. 29, 2018) ......................................19

*Passarella v. Aspirus, Inc.*,
    2023 WL 2455681 (W.D. Wis. Mar. 10, 2023) ..................................13

*Peeples v. City of Detroit*,
    891 F.3d 622 (6th Cir. 2018) ..............................................................19

*Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*,
    477 F.3d 383 (6th Cir. 2007) ..............................................................10

*States v. Seeger*,
   380 U.S. 163 (1965) ....................................................................................12

*Van Gorp v. Eli Lily & Co.*,
   2023 WL 5486052 (S.D. Ind. Aug. 24, 2023)....................................................22

*Yeager v. FirstEnergy Generation Corp.*,
   777 F.3d 362 (6th Cir. 2015) ...............................................................11

**Statutes**

42 U.S.C. § 2000e ................................................................................18

**Other Authorities**

5C Wright & Miller, Federal Practice and Procedure § 1368 .................................11

Mich. Dep't of Health & Human Servs., COVID-19 Vaccines & Fetal Cells
   (Updated May 1, 2023)............................................................................17

**Issues Presented**

1. Whether Corewell is entitled to judgment on the pleadings because Plaintiffs' basis for accommodations were not "religious" beliefs?

2. Whether Plaintiff Barr's Title VII claim should be dismissed for the alternative reason that she failed to exhaust administrative remedies?

3. Whether Corewell is entitled to judgment on the pleadings on Plaintiffs' disparate-treatment claim, which merely relabels the failure-to-accommodate claims, contrary to law?

## Introduction

During the height of the pandemic, Corewell—then Beaumont—required its employees to be vaccinated against COVID-19, or else their employment would end. Plaintiffs (all of whom had routinely taken required vaccinations in the past) all sought exemptions from this policy, claiming in essence that their religion allowed them to choose not to take *this* particular vaccine. These exemption requests were denied, and Plaintiffs chose not to comply with the policy. Plaintiffs have now filed this lawsuit, claiming that their vaccination exemption requests should have been granted. But courts—including in this district—have routinely held that the precise sort of accommodation requests alleged here do not reflect religious tenets and do not state a claim under Title VII as a matter of law.

Perhaps in recognition of this, Plaintiffs have also tried to reframe these invalid religious accommodation claims as disparate treatment. But courts—including in this district, in other lawsuits brought by the same plaintiff's counsel—have likewise rejected this gambit at the pleading stage. For when, as here, a plaintiff pleads that they sought an *exemption* from a generally-applicable policy, they have by definition asserted facts showing that they were not subject to disparate treatment. That is, the termination was not the but-for result of religion, but the generally-applicable policy. Plaintiffs here allege no facts to suggest any valid disparate-treatment theory (they didn't even identify a protected classification) apart from

merely relabeling their accommodation claims as the religious beliefs "discriminated" against. Plaintiffs' claims should be dismissed on the pleadings.

## Statement of Facts[2]

### I.   Pursuant to government mandate, Corewell announces its policy that employees must be vaccinated against COVID-19.

On January 31, 2020, the U.S. Department of Health and Human Services announced a public health emergency in the United States because of COVID-19. *See* Ex. A. On July 28, 2021, in response to the rapid spread of the highly-contagious Delta variant of COVID and to protect the safety of its patients, employees, and providers, Corewell (then known as Beaumont) announced a vaccination policy. PageID.10, ¶ 10; Ex. B-1, July 28, 2021 Beaumont announcement. The final policy required all employees who worked in any Beaumont facility to obtain the vaccine or an exemption within eight weeks of full approval of any viable COVID-19 vaccine. Ex. B-2, Vaccine Policy, Part II.B.  The policy also stated that failure to comply by the deadline would lead to suspension and then termination. *Id.* at Part V.

On August 23, 2021, the FDA first gave full approval to a COVID-19 vaccine. *See* FDA News Release, FDA Approves First COVID-19 Vaccine, *at* https://www.fda.gov/news-events/press-announcements/fda-approves-first-covid-

---

[2]Consistent with the appropriate standard of review, *see infra* at 10-11, the facts cited herein come from Plaintiffs' complaint, documents cited therein that are central to Plaintiffs' claims, public documents, and matters subject to judicial notice.

19-vaccine. The deadline for employees to receive their vaccine was late October 2021. PageID.10, ¶ 11. Employees who sought an exemption from the policy due to a religious objection were provided with a form to complete. *See* PageID.4, ¶ 18. Employees could also submit an appeal if denied. *See* PageID.7 ¶ 37.

## II.    Plaintiffs submit accommodation requests.

Each plaintiff submitted accommodation requests to Beaumont.

### A.    Plaintiff Carolyn Earl

Carolyn Earl—a respiratory therapist at Beaumont Hospital, Wayne—submitted a Request for Religious Exemption from COVID-19 Vaccination Form on August 26, 2021. Ex. C, Earl Exemption Form. The Complaint itself asserts no facts about the content of her accommodation request or the nature of her purported religious beliefs. *See* ECF No. 1, PageID.4, ¶¶ 18-21. But the Complaint does reference her exemption form. As a result, the form is properly before the Court at the pleadings stage. *See infra* at 10-11.

The form indicated that, if granted a religious exemption, you "may be required to undergo periodic COVID-19 testing, in addition to other safety procedures." *Id.* When asked to describe the religious belief or practice that is the basis of her exemption request, Earl stated:

> I am a child of God, a follower of the word and endwelled [*sic*] by the Holy Spirit. Christ alone is able to mandate what is right for my body.

*Id.* When asked to explain the specific tenet of her religious belief that precluded her from receiving the vaccine, she stated:

> In Christ alone. He has opened my eyes and told me No Vaccine or random testing.

*Id.* When asked if she had received vaccinations before, she said yes, and when asked to explain why the COVID-19 vaccine in particular conflicted with her religious beliefs, she said:

> Psalms 91. He protects me from pestilence not the poisons of man. I will follow the narrow path. I will obey my personal Savior.

*Id.* Earl's request was denied because it did not meet the established criteria for exemption. Ex. D, Denial Letter. Earl does not allege that she appealed. Earl did not comply with the vaccination policy, and was ultimately terminated per the policy.

### B.   Plaintiff Rita Hanna

Rita Hanna—a phlebotomy supervisor for Beaumont Laboratory—submitted a Request for Religious Exemption from COVID-19 Vaccination Form on September 5, 2021. Ex. E, Hanna Exemption Form; ECF No. 1, PageID.4. In response to the questions about her religious belief and the specific tenet that precludes her from receiving the COVID-19 vaccine, she attached a letter from the Saint Joseph Chaldean Catholic Church. The letter stated that "the Church does not oppose the vaccine" but indicated that Hanna has the "dignity and right to exercise [her] will according to her conscience," and thus should not be "forced" to take the

vaccine. *Id.* She also provided a form letter, signed by her, again stating that the "Catholic Church does not oppose individuals from freely receiving the vaccine and encourages people to safeguard personal and public health, the Church opposes forced vaccination when the vaccine does not align with their moral conscience." *Id.*

When asked if she had received vaccinations in the past, she said yes, and when asked to explain why the COVID-19 vaccine in particular conflicted with her religious beliefs, she said:

> My Catholic faith allows me to use my conscience with each and everything that I put into my body, even between vaccines. Now that I have done further research into vaccines, I will be requesting an exemption from all vaccines mandated at work, including the flu vaccine.

*Id.* Hanna's request was denied because it did not meet the established criteria for exemption. ECF No. 1, PageID.5 ¶ 25.

Hanna then submitted an appeal reiterating that as "a young woman of childbearing years, at this time in my life, I feel uncomfortable and sincerely afraid to receive the vaccine," and stated that her "Catholic faith requires each baptized Christian to use their conscience when making decisions." PageID.7, ¶ 37; Ex. F, Hanna Appeal. Her appeal was denied, noting that the "documentation you submitted relates to personal concerns regarding the COVID-19 vaccine, and does not establish a conflict between the vaccination requirement and your stated religious beliefs." Ex. G, Hanna Appeal Denial. Hanna then took FMLA leave, with

her doctor clearing her to work on December 6, 2021. PageID.7, ¶¶ 40-41. But because Hanna did not comply with the vaccination policy, she could not return to work after the expiration of her leave. Consistent with the policy, her employment was terminated.

### C.   Plaintiff Michael Webster

Michael Webster, a registered nurse at Beaumont Hospital-Royal Oak's 4C Medical Progressive Care Unit, submitted a Religious Exemption from COVID-19 Vaccination form on September 4, 2021. Ex. H, Webster Exemption Form. When asked to describe the religious belief or practice that is the basis of his exemption request, he stated:

> I trust in God for my safety & protection. I have attended Catholic Church my whole life. I have treated Covid pt's for 14 mth and my God protected me through it all. Psalm 919-10 [*sic*] Proverbs 3:5-6.

*Id.* When asked to explain the specific tenet of his religious belief that precludes him from receiving the vaccine, he stated:

> Through much prayerful consideration, my deeply held religious belief is that God, through, the holy spirit within is instructing me to <u>NOT</u> receive this vaccine or any other future vaccines and in doing so I would be directly going against the will of God!

*Id.* He acknowledged receiving vaccines before, and when asked to explain why taking the COVID-19 vaccine conflicted with his religious beliefs, he said:

> My God has been my protector, my healer and my strength throughout the pandemic has allowed no plague to come near myself or my family despite the fact I have cared for hundreds-thousands of Covid pt's.

> Putting my trust in science/vaccine/government/employer to keep me healthy instead of God would be a gross violation of my deeply held religious beliefs.

*Id.* Webster also included the same form letter that Hanna had submitted, which was word-for-word identical to Hanna's letter but for the name attached to it. *Compare* Ex. I (Webster Form Letter) *with* Ex. E (Hanna Form Letter). Webster's request was denied because it did not meet the established criteria for exemption. Ex. J, Webster Denial Letter. Webster alleges that he submitted an appeal, stating:

> pursuant to my Christian faith, that my body is a temple of the Holy Spirit. It is my God-given responsibility and requirement to protect the physical and spiritual integrity of my body against potentially unclean food and injection.

ECF No. 1, PageID.6, ¶ 29. His appeal was denied because he had "not identified a specific tenet of your religious beliefs that conflicts with the vaccine requirement." Ex. K, Appeal Denial.

### D. Plaintiff Emily Barr

Emily Barr, a registered nurse in the Rehab Department at Beaumont's Royal Oak Hospital, submitted a Request for Religious Exemption from COVID-19 Vaccination Form on September 3, 2021. Ex. L, Barr Exemption Form. When asked to describe the religious belief or practice that is the basis of her exemption request, she stated, "Anything not made by God defiles God." *Id.* When asked to explain the specific tenet of her religious belief that precludes her from receiving the vaccine, she stated, "My religion believes the body is a temple and should not be involved in

-7-

any sacrilegious act." *Id.* After acknowledging she had received vaccinations in the past, her explanation about what made the COVID-19 vaccine specifically inconsistent with her religious beliefs, she wrote:

> I was not informed of religious exemption in the past. This vaccine is being forced upon me and my religion does not believe in anything being forced on ones body.

*Id.* Barr's request was denied because it did not meet the established criteria for exemption. Ex. M, Denial Letter.

On October 4, 2021 Barr handwrote a letter offering "additional" information, which confirmed her primary concern was personal safety rather than a religious tenet. In full, the letter stated:

> To whom it may concern,
>
> My initial form sent in was denied. I'm assuming for lack of detailed explanation. Individuals religious beliefs are required to be respected but for the sake of my job I will elaborate on this very personal matter. Vaccines use aborted fetal cells in early phases of development. I am pro-life and my religion practices informed judgment & frowns upon anything being forced on ones body, including vaccinations, especially one so new. With all this said, I was recently put in a position to make the hardest decision of my life and had an abortion. I will <u>NOT</u> be putting this vaccine into my body, at least no time soon. Also, I had COVID March of 2020 and there are several studies out about the extra risk of illness at hand getting the vaccine after already having COVID. I expect my religious beliefs & medical concerns to be respected and kept confidential. Thank you for considering this exemption.

Ex. N, Barr Appeal Letter. The appeal was denied because the documentation did not establish a conflict between the vaccination requirement and her stated religious

beliefs. Ex. O, Appeal Denial. Barr did not comply with the vaccination policy, and was ultimately terminated per the policy.

### III.    Hanna, Webster, and Earl file EEOC charges; Barr does not.

On December 1, 2021, Hanna filed an EEOC charge claiming that her religious accommodation request was unlawfully rejected. Ex. P, Hanna EEOC Charge. On June 15, 2022, Webster filed an EEOC charge alleging "my employer failed to accommodate me because of my Religion (Catholic), in violation of Title VII…." Ex. Q, EEOC Charge. And on June 16, 2022, Earl filed a similarly-worded charge, claiming as relevant here that she was "discriminated against because of my religion (Christian)." Ex. R, Earl EEOC Charge. Barr did not file an EEOC charge, as the Complaint confirms. ECF No. 1, PageID.3, ¶ 9.

### IV.    Plaintiffs file suit, alleging facts showing a rejection of accommodation requests followed by termination for failing to follow generally-applicable policy.

Plaintiffs filed the current complaint on April 7, 2023. Their factual pleadings, as a whole, confirm that Beaumont had a vaccination policy that applied to all employees, with a deadline for compliance. PageID.3, ¶¶ 10-11. Plaintiffs all likewise confirm that they declined to comply with that generally-applicable policy after their accommodation requests were denied (albeit with argumentative language that they were terminated for "refusing to compromise" their "religious" beliefs). PageID.4-7, ¶¶ 17, 21, 34-35, 42. Consistent with these pleadings, Plaintiffs allege

a count of failure to accommodate under Title VII. PageID.11. Plaintiffs also reframe the identical factual allegations into a disparate treatment mold: claiming that they "espoused religious beliefs" and were terminated because they were not granted exemptions for those "religious beliefs," whereas other exemptions from other employees were granted. PageID.13-15. No facts about the Plaintiffs' purported religious beliefs are alleged, apart from references to Hanna, Webster, and Barr's accommodation requests. *See id.* Plaintiff Earl does not plead *any* facts describing the content of her accommodation form, or otherwise plead facts about her purported religious beliefs. PageID.4, ¶¶ 18-21. None of the Plaintiffs identify a classification protected by Title VII.

## Argument

Rule 12(c) provides that "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A Rule 12(c) motion is considered under the same standard of review as a Rule 12(b)(6) motion. *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 389 (6th Cir. 2007). In ruling on such a motion, the Court may consider (1) the complaint; (2) documents referenced in the pleadings that are central to plaintiff's claims; (3) matters which may be judicially noticed; and (4) public documents. *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023).

The court must thus "construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). A complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). And judgment on the pleadings is appropriate if the movants clearly establish that no material issue of fact remains to be resolved and that they are entitled to judgment as a matter of law. *Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021); 5C Wright & Miller, Federal Practice and Procedure § 1368.

**I.      Corewell is entitled to judgment on the pleadings because Plaintiffs' accommodation requests, on their face, do not identify religious objections to vaccination.**

A party alleging failure-to-accommodate religious beliefs under Title VII must prove "(1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflicts; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement." *Yeager v. FirstEnergy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015). On the first element, three showings are required: a belief that is (1) "religious," (2) "sincerely held," and (3) "in conflict with" the job requirements. *Id.*

-11-

As for the "religiosity" requirement, the inquiry is "an objective one." *United States v. Seeger*, 380 U.S. 163, 184 (1965). A belief is "religious" if it is religious in the "person's own scheme of things," *Dorr v. First Ky. Nat'l Corp.*, No. 84-5067, 1986 WL 398289, at *3 (6th Cir. July 17, 1986), which means it "occupies a place in the life of its possessor parallel to that filled by . . . God," *Seeger*, 380 U.S. at 166. Courts look to various objective factors when assessing whether a belief is "religious," including whether it "address[es] fundamental and ultimate questions having to do with deep and imponderable matters," whether it is "comprehensive in nature," and whether it is "accompanied by certain formal and external signs." *Africa v. Pennsylvania*, 662 F.2d 1025, 1032 (3d Cir. 1981). But Title VII "does not require the accommodation of personal preferences, even if wrapped in religious garb." *Hussein v. The Waldorf-Astoria*, 134 F. Supp. 2d 591, 597 (S.D.N.Y. 2001).

Courts have routinely held in vaccine cases that "anti-vaccination beliefs" themselves "are not religious." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 492 (3d Cir. 2017). Rather, to qualify for Title VII protection, a person's opposition to vaccination must "be part of a broader religious faith." *Id.* at 493 & n.26. Thus, in *Fallon*, the Third Circuit held that a plaintiff's opposition to the flu vaccine arising out of his "general moral commandment" to not do harm to one's own body was an 'isolated moral teaching'; by itself, it is not a comprehensive system of beliefs about fundamental or ultimate matters." *Id.*

-12-

Consistent with this reasoning, courts have routinely held that political or moral beliefs about vaccines are not religious, even when couched in religious language like "my body is a temple" or a religiously-derived ability to make choices for oneself. *See Friend v. Astrazeneca Pharmaceuticals, LP*, No. 22-cv-03308, 2023 WL 3390820, at *3 (D. Md. May 11, 2023) (declarations that one "has the right to make his own decisions" are not religious, even when religion is the alleged basis of this "case-by-case" right"); *Finkbeiner v. Geisinger Clinic,* 623 F. Supp. 3d 458, 465-66 (M.D. Pa. 2022) (rejecting, at the 12(b)(6) stage, COVID vaccine accommodation claim based on assertion that "I am a Christian and hold a sincere religious belief that I have a God given right to make my own choices regarding what is good or bad for me."); *Passarella v. Aspirus, Inc.*, 2023 WL 2455681, at *5 (W.D. Wis. Mar. 10, 2023) (claim that religion required plaintiff to "live a healthful life and not do anything to harm her body," and had no blanket prohibition on vaccines but instead allowed her to pick and choose was a "personal medical judgment" not a religious belief, despite its use of religious language); *Brox v. Hole*, 590 F. Supp. 3d 359, 366 n.7 (D. Mass. 2022) (holding that "Jesus tells me that it is unwise to put the COVID vaccine into my body, his creation" has "no grounding in religious practice but [is] rather [an] expression[] of idiosyncratic personal belief").

Indeed, just weeks ago, Judge Friedman dismissed on the pleadings a nearly identical lawsuit to this one, which was likewise filed by counsel for the Plaintiffs

here. *Lucky v. Landmark Med. of Michigan, P.C.*, No. 23-CV-11004, 2023 WL 7095085, at *1 (E.D. Mich. Oct. 26, 2023). In *Lucky*, the plaintiff claimed an exemption from her putative employer's COVID-19 vaccine mandate because "God spoke to [her] in her prayers and directed her that it would be wrong to receive the COVID-19 vaccine." *Id.* at *1. Judge Friedman, citing the authorities above, held that the plaintiff had merely asserted a bare claim that her religion afforded her an *ad hoc* privilege to avoid unwanted obligations, rather than what Title VII requires: "that her religion has a specific tenet or principle that does not permit her to be vaccinated." *Id.* at *4-7. He thus dismissed the complaint on the pleadings.

All four accommodation requests here are identical—often, nearly word-for-word identical—to the COVID-19 vaccination accommodation claims rejected in *Lucky*, *Brox*, *Passarella*, *Finkbeiner*, and *Friend* cited above.

**A.    Carolyn Earl.**  The Court should first dismiss Earl's accommodation claim because her pleadings are lacking. There are only four substantive paragraphs in the Complaint that reference Earl at all—and none of them say anything about the content of Earl's accommodation requests or her purported religious beliefs. See ECF No. 1, PageID4, ¶¶ 18-21. That is enough to dismiss on its own. See, e.g., *Leta v. Hamilton Cnty. Dep't of Job & Fam. Servs.*, No. 1:22-CV-511, 2023 WL 2788833, at *10 (S.D. Ohio Apr. 5, 2023) (dismissing religious accommodation claim on the pleadings where the plaintiff did "not allege any facts explaining the

nature of their religious beliefs" or whether they were "sincerely held").In any event, Earl's written accommodation request is properly before the Court at the 12(c) stage because it is referenced in the Complaint and is central to her claim. And that request form shows that Earl's sole basis for seeking accommodation was a bare claim that God told her "no vaccine or random testing." *Supra* at 4. This is *precisely* the sort of request rejected in *Lucky* and *Brox*. It does not set forth a specific religious tenet or belief that precludes vaccination; rather, it asserts a bare, idiosyncratic right to refuse specific obligations ad hoc. Judgment is warranted.

**B.  Michael Webster.** For the same reasons, the Court should dismiss Michael Webster's accommodation claim. The form letter he submitted with his accommodation request confirmed that the Catholic Church does not have a tenet opposing vaccination. Rather, like Earl, his basis for seeking a religious exemption is his claim that, after prayer, the "holy spirit within is instructing me to NOT receive this vaccine…." *Supra* at 6. Again, this is, nearly verbatim, the purported religious belief rejected in the *Lucky* and *Brox* cases. In his appeal when asked to expound upon his request, Webster asserted a "my body is a temple" belief: that it was "my God-given responsibility and requirement to protect the physical and spiritual integrity of my body against potentially unclean food and injection." *Supra* at 7. As the *Friend*, *Finkbeiner*, and *Passarella* cases all held, such assertions of a purportedly religious-granted right to make personal choices about what to put in

-15-

one's body is not a religious tenet, but a personal and moral decision. Judgment is appropriate on the pleadings for Webster's claim.

C. **Rita Hanna.** Hanna's claim also fails on the pleadings. She submitted a letter expressly indicating that the tenets of her Catholic religion do *not* include opposition to vaccination. Rather, both she (and the letter from her pastor) asserted that her religion allowed her to follow her own conscience on what to "put into [her] body," including picking and choosing between vaccines. *Supra* at 5. And she made clear that her decision on taking *this* vaccine was based on her "research" and fears that the vaccine somehow could affect her adversely given she was of "child-bearing" age. *Id.* The case law cited above makes clear that the assertion of a religiously-based right to make personal decisions on what to put in one's body is not a "religious" belief under Title VII.

D. **Emily Barr.** Barr's accommodation request, although purportedly "religious," was on its face rooted in her own personal decision-making rather than a requirement of her religious beliefs. Her initial accommodation request was literally a "my body is a temple" assertion: "My religion believes the body is a temple and should not be involved in any sacrilegious act." *Supra* at 7-8. And in her appeal, Barr made clear that her opposition was based not on a religious tenet, but on her own personal medical concerns about the vaccine: that this vaccine was "so new" and that there were purported studies showing an increased "risk of illness"

from taking the vaccine if one had already had COVID. *Supra* at 8.

Although Barr made a bare assertion that vaccines "use aborted fetal cells in early phases of development" and that she is "pro-life," she did not claim that her religious beliefs therefore required her to abstain from vaccination based on abortion concerns.[3] *Id.* Rather, after making the abortion comments, she wrote that "I will NOT be putting this vaccine into my body, ***at least no time soon***." *Id.* (emphasis added). In other words, not only did Barr's accommodation request fail to assert that her subjective religious beliefs about abortion *forbade* her from taking the COVID-19 vaccine, she confirmed that she might take the vaccine in the future.[4] *Id.* On its

---

[3]Although unimportant in resolving this motion, Barr's assertion is factually false. As judicially noticed in another court, "fetal cell lines, not fetal cells" created in the 1970s and 1980s have been used for testing of various vaccines, but "[n]one of the COVID-19 vaccines available for use in the United States contain fetal cells or fetal tissue." *In re Matthew M.*, 88 Cal. App. 5th 1186, 1197 & n.6 (2023); *see also, e.g.*, *Gardner-Alfred v. Fed. Rsrv. Bank of New York*, 2023 WL 6214863, at *8 (S.D.N.Y. Sept. 25, 2023). These facts are set forth in numerous public documents likewise subject to judicial notice. *See* Mich. Dep't of Health & Human Servs., COVID-19 Vaccines & Fetal Cells (Updated May 1, 2023) ("Pfizer and Moderna COVID-19 vaccines do not use a fetal cell line to produce or manufacture their vaccine. However, a fetal cell line was used in a very early phase to confirm efficacy prior to production and manufacturing.")

[4]While Barr's own words ruled out any fetal-cell based religious objection to vaccination, her bare reference to fetal cells and being pro-life would have been insufficient to state an accommodation claim all the same. See, e.g., *Ellison v. Inova Health Care Servs.*, No. 123CV00132MSNLRV, 2023 WL 6038016, at *7 (E.D. Va. Sept. 14, 2023) (dismissing on the pleadings accommodation claim making mere reference to fetal cells and being a pro-life Catholic insufficient to articulate a link between religious beliefs and objection to the vaccine).

face, Barr's appeal reemphasized that her vaccination objection was not due to a religious tenet but rather her specific personal and medical concerns that the vaccine was "too new" to take. *Id.* Based on the authority cited above, Barr's claim fails on the pleadings and judgment is appropriate.

**II.      Barr's Title VII claim also fails because she did not file an EEOC charge, and thus has not exhausted administrative remedies.**

Judgment on the pleadings is warranted for Barr for another reason: she failed to exhaust administrative remedies, as she concedes in her Complaint. ECF No. 1, PageID.3, ¶ 9. *See* 42 U.S.C. § 2000e–5(e)(1), (f)(1). And while Barr makes a perfunctory allegation that she may "piggyback" on the EEOC charges of her co-Plaintiffs, *id.*, she is wrong.

A party that does not file an EEOC charge may "piggyback" on another party's charge if it arises from the same discriminatory conduct and the first charge "contains sufficient information to notify prospective defendants of their potential liability and permit the EEOC to attempt informal conciliation of the claims before a lawsuit is filed." *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 195 (6th Cir. 1995). Piggybacking is appropriate when one might "fairly ask 'if it is impossible to reach a settlement with one discriminatee, what reason would there be to assume the next one would be successful?'" *Id.* at 196. When, as here, the plaintiffs were part of a large organization, the charge relied on must contain "some indication that the grievance affects a group of individuals defined broadly enough to include those

who seek to piggyback on the claim." *Peeples v. City of Detroit*, 891 F.3d 622, 632 (6th Cir. 2018).

Further, a party that admittedly has not exhausted administrative remedies must plead facts plausibly demonstrating exhaustion is excused. *See, e.g.*, *Clear Sky Car Wash, LLC v. City of Chesapeake, Va.*, 910 F. Supp. 2d 861, 883 (E.D. Va. 2012), *aff'd,* 743 F.3d 438 (4th Cir. 2014) (holding that party must "plead facts plausibly showing [claimed] exception would excuse their failure to exhaust administrative remedies.") *McGrath v. Liberty Life Assurance Co. of Bos.*, No. 17-CV-03095, 2018 WL 1547103, at *2-3 (C.D. Ill. Mar. 29, 2018) (same); *Hues v. Fed. Ins.,* No. 2:15-CV-84, 2015 WL 6107644, at *7 (S.D. Ohio Oct. 16, 2015) (same); *cf. Howlett,* 49 F.3d at 196 (noting "record lacks information" necessary to analyze "sufficiency of the [timely] charge to support piggybacking by others" but excusing "inadequacies of the record" based on admissions at oral argument.)

Here, the Court should dismiss Barr for failure to exhaust remedies. She pleads nothing in her complaint justifying her piggybacking claim, including *whose* charge she is purportedly piggybacking on, or any factual reason why conciliation would have been futile. Nor could she. Plaintiffs have identified a mere three EEOC charges lodged by isolated individuals working at different locations within a large employer. In order to piggyback on one of the three isolated EEOC charges in this case, Barr would have to show that the administrative charge on which she seeks to

rely was worded broadly enough to encompass Barr's claim too. But Hanna and Earl's EEOC charges do not mention other employees at all, and Webster's says only that other employees *did* receive accommodations. *See* Exs. Q, R, S. She has not alleged facts that would support piggybacking here.

Barr no doubt will cite *Collias v. MotorCity Casino*, where her counsel—in another COVID antivaccine case—successfully invoked piggybacking. 2023 WL 6406220, at \*5 (E.D. Mich. Sept. 30, 2023). Putting aside that the *Collias* court, respectfully, did not pay sufficient heed to the Sixth Circuit's requirements for asserting piggybacking for a large employer, *Collias* found that the plaintiff there both (1) pled "plausible" facts supporting piggybacking; *and* (2) showed that *thirteen* other plaintiffs with "substantively similar" religious objections had their claims rejected. *Id.* Here Barr has pled no facts supporting piggybacking. And on the need for "substantial similarity," she has an inescapable quandary: either (1) she acknowledges that her religious accommodation claim is no different than Hanna, Earl, and Webster's "body is a temple" style claims, in which case she loses on the merits, *or* (2) she says that the abortion-related language in her accommodation request somehow makes her claim stronger—in which case her claim is not "substantially similar" to the charging parties. If the latter, she cannot plausibly claim that it would have been futile for the EEOC to conciliate her distinct,

"stronger" religious claim. Barr failed to exhaust remedies and her failure should not be excused, particularly given the inadequacies of her pleadings.

**III.   Plaintiff's disparate treatment counts—which is an obvious attempt to repackage the failure-to-accommodate claim in alternative language—fails to state a claim.**

Plaintiffs' Complaint seeks to recast their failure to obtain religious accommodations as religion-based disparate treatment. *See* ECF No. 1, PageID.13-14-17. But courts have routinely rejected efforts by plaintiffs to "repackage" claims involving failure to provide an accommodation as disparate treatment. Thus, for instance, in *DiFranco v. City of Chicago*, the plaintiff alleged failure to accommodate a medical request for work-at-home or social distancing due to medical susceptibility to COVID-19. 589 F. Supp. 3d 909, 912-916 (N.D. Ill. 2022). The plaintiff also alleged that this was disparate treatment because other employees *were* given accommodations to work from home. *Id.* at 917. The court dismissed the disparate treatment claims, at the 12(b)(6) stage, reasoning that—by definition—the plaintiff's allegation was that the employer did *not* treat him differently from co-workers due to his disability; rather, the plaintiff sought but was not given differential treatment. *Id.*

The same result followed in *Van Gorp v. Eli Lily & Co.*, where—as here—the plaintiffs alleged failure to accommodate medical and religious objections to the COVID-19 vaccine while also claiming that their termination for not taking the

vaccine was disparate treatment.  2023 WL 5486052, at *4 (S.D. Ind. Aug. 24, 2023).
The court noted that such a claim, by definition, is that plaintiffs were treated the
*same* as non-disabled or non-religious employees—and that, as pled, the reason for
termination was failure to comply with a vaccination policy applicable to *all*
employees, not "because of" their protected status. *Id.* at *4, *6.

Indeed, Plaintiffs' counsel knows this because at least *three* other courts, two
in this district, have rejected his other clients' similar attempts to recast failure-to-
accommodate as discrimination or retaliation. In *Collias*, *supra* at 20, Judge Berg
held that plaintiffs' failure-to-accommodate allegations did not plausibly state
retaliation or disparate treatment claims; as here, the pleadings indicated that the
terminations resulted from failure to comply with a *policy* applicable to all
employees, and did not plausibly allege facts that the plaintiffs were terminated
"because of" their religion or religious accommodation requests. 2023 WL 6406220
at *7, *8. In *Lucky v. COBX, Co.*, Judge Roberts dismissed plaintiffs' Title VII
retaliation count for failure to state a claim where—as here—the factual allegations
of the complaint showed (1) there was a vaccination policy applicable to all
employees; (2) employees who did not comply with the policy would be terminated;
(3) the plaintiffs sought but did not receive religious exemptions; and (4) the
plaintiffs were terminated due to the policy. 2023 WL 3359607, at *3 (E.D. Mich.
May 10, 2023). And Judge Roberts further cited in support another case filed by

Plaintiffs' counsel here, in the Eastern District of Wisconsin, that was dismissed on similar reasoning. *Id.*

The same result should follow here. Plaintiffs' complaint acknowledges that Corewell had a "COVID-19 vaccination mandate" and that the "deadline for *employees* to receive the first dose of the vaccine was October 20, 2021" ECF No. 1, PageID.3, ¶¶ 10-11. That policy—part of the 12(c) record as a document referenced in the complaint and central to its claims—makes clear that under the policy, employees who did not comply would be terminated. Ex. B. And while Plaintiffs rely on artful, conclusory language to try to fit the language of a disparate treatment claim (*i.e.*, "Defendant terminated Plaintiff Hanna as a direct and proximate result of refusing to compromise on her religious beliefs," PageID.7 ¶ 42), nowhere do they allege <u>facts</u> suggesting that Plaintiffs were terminated *because of* their religion rather than because they chose to remain unvaccinated despite the vaccination policy. For instance, they do not allege facts suggesting that *anyone*—religious or not—who failed to obtain an exemption from the policy was nonetheless *not* terminated under the generally-applicable policy.

Indeed, Plaintiffs fail to even offer even the most basic outlines of what protected class they belong to, *apart* from reference to their asserted beliefs as stated in their accommodation forms. *See, e.g.*, ECF No. 1, PageID.13, ¶¶ 84-85. And while Hanna and Webster quote from their accommodation forms that identified

-23-

themselves as Catholic or Christian, *id.* ¶¶ 29, 37, they do *not* assert that the protected class in question is Catholics or Christians. This is for the obvious reason that Plaintiffs cannot—consistent with duties of candor to the tribunal and to avoid vexatious, frivolous pleadings—claim that Corewell terminated employees for identifying as Catholic or Christian, that Catholics or Christians who complied with the vaccine mandate were nonetheless terminated, or anything of the sort.

Rather, Plaintiffs' complaint alleges that Plaintiffs were terminated because they did not receive the vaccine, *after being unable* to obtain an exemption from a facially-neutral, generally-applicable policy requiring vaccination. They have not plausibly alleged disparate treatment based on religion. The disparate treatment claims should be dismissed for failure to state a claim.

## Conclusion

The Court should grant judgment on the pleadings and dismiss the Complaint.

Respectfully submitted,

KIENBAUM HARDY VIVIANO PELTON & FORREST, P.L.C.

By: */s/Thomas J. Davis*
     Eric J. Pelton (P40635)
     Thomas J. Davis (P78626)
Attorneys for Defendant
280 N. Old Woodward Ave., Ste. 400
Birmingham, Michigan 48009
(248) 645-0000
epelton@khvpf.com
Dated:  November 21, 2023     tdavis@khvpf.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 21, 2023, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all parties of record.

*/s/ Thomas J. Davis*
Kienbaum Hardy
  Viviano Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave., Suite 400
Birmingham, MI  48009
(248) 645-0000
tdavis@khvpf.com
(P78626)

500892