# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

EMILY BARR, CAROLYN EARL,
RITA HANNA, MICHAEL WEBSTER,

      Plaintiffs,                       Case No. 23-cv-10808

v.                                     Hon. Jonathan J.C. Grey
                                     Mag. Judge David R. Grand

COREWELL HEALTH D/B/A
BEAUMONT HEALTH,

      Defendants.

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Eric J. Pelton (P40635) |
| Colin H. Wilkin (P86243) | Thomas J. Davis (P78626) |
| HURWITZ LAW PLLC | *Attorneys for Defendant* |
| *Attorneys for Plaintiffs* | 280 N. Old Woodward Ave., Suite 400 |
| 340 Beakes St., Suite 125 | Birmingham, MI 48009 |
| Ann Arbor, MI 48103 | (248) 645-0000 |
| (844) 487-9489 | epelton@khvpf.com |
| noah@hurwitzlaw.com | tdavis@khvpf.com |
| colin@hurwitzlaw.com | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO F.R.C.P 12(c)

NOW COME Plaintiffs, Emily Barr, Carolyn Earl, Rita Hanna, and Michael Webster, (collectively "Plaintiffs"), by and through their attorneys, Hurwitz Law PLLC, and respectfully requests that this Court deny Defendant's Motion for Judgment on the Pleadings Pursuant to F.R.C.P. 12(c) in its entirety. In support of

Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss, Defendant

relies on the facts and law in the attached Brief in Support

Respectfully submitted,
HURWITZ LAW PLLC
*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
Brendan J. Childress (P85638)
Colin H. Wilkin (P82243)
*Attorneys for Plaintiff*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104

Dated: December 12, 2023

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

EMILY BARR, CAROLYN EARL,
RITA HANNA, MICHAEL WEBSTER,

        Plaintiffs,                    Case No. 23-cv-10808

v.                                    Hon. Jonathan J.C. Grey
                                    Mag. Judge David R. Grand

COREWELL HEALTH D/B/A
BEAUMONT HEALTH,

        Defendants.

| | |
|---|---|
| Noah S. Hurwitz (P74063) | Eric J. Pelton (P40635) |
| Colin H. Wilkin (P86243) | Thomas J. Davis (P78626) |
| HURWITZ LAW PLLC | *Attorneys for Defendant* |
| *Attorneys for Plaintiffs* | 280 N. Old Woodward Ave., Suite 400 |
| 340 Beakes St., Suite 125 | Birmingham, MI 48009 |
| Ann Arbor, MI 48103 | (248) 645-0000 |
| (844) 487-9489 | epelton@khvpf.com |
| noah@hurwitzlaw.com | tdavis@khvpf.com |
| colin@hurwitzlaw.com | |

## BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO F.R.C.P 12(c)

# TABLE OF CONTENTS

TABLE OF AUTHORITITES.................................................................... iii

STATEMENT OF ISSUES PRESENTED .......................................... vi

INTRODUCTION...................................................................................1

STATEMENT OF FACTS ....................................................................4

ARGUMENT ........................................................................................11

    I.    THE FEDERAL PLEADING REQUIREMENT FAVOR
           PLAINTIFFS. ...................................................................11

    II.    PLAINTIFF BARR CAN PIGGYBACK ON EEOC CHARGES.
           ....................................................................................................17

    III.    PLAINTIFFS' DISPARATE TREATMENT CLAIMS ARE
           VIABLE..............................................................................22

          A.    Plaintiffs Were Treated Worse Than Similarly Situated
               Workers...............................................................................23

          B.    Plaintiffs Plead ELCRA Disparate Treatment Claims. .......24

CONCLUSION.....................................................................................25

## <u>TABLE OF AUTHORITITES</u>

**Cases**

*Afr. v. Com. of Pa.*, 662 F.2d 1025 (3d Cir. 1981) ...................................12

*Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981) ..................................16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)....................................10

*Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215 (9th Cir. 2023) .....12

*Brown v. MGM Grand Casino*, No. 22-128978, 2023 5489023 (E.D. Mich. Aug. 24, 2023)............................................................................................................... 23, 24

*Callahan v. Woods*, 658 F.2d 679 (9th Cir. 1981)........................................... 12, 13

*Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339 (6th Cir. 2012) ........................23

*Clear Sky Car Wash, LLC v. City of Chesapeake, Va.*, 910 F. Supp. 2d 861 (E.D. Va. 2012).........................................................................................................19

*Collias v. MotorCity Casino*, 2023 WL 6406220, at *5 (E.D. Mich. Sept. 30, 2023) ................................................................................................................ 3, 19, 21

*DiFranco v. City of Chicago,* 589 F. Supp. 3d 909 (N.D. Ill. 2022)......................24

*Directv, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007) ..........................................10

*Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). ................................11

*E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836 (6th Cir. 1994) .......................17

*EEOC v. Consol Energy, Inc.*, 860 F.3d 131 (4th Cir. 2017) ................................12

*Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872 (1990) ............. 12, 13

*Equal Emp. Opportunity Comm'n v. Publix Super Markets, Inc.*, 481 F. Supp. 3d 684 (M.D. Tenn. 2020)..................................................................................................14

*Gadling-Cole v. W. Chester Univ.*, 868 F. Supp. 2d 390 (E.D. Pa. 2012) .............14

*Howlett v. Holiday Inns, Inc.*, 49 F.3d 189 (6th Cir. 1995)....................................18

*Kather v. Asante Health System*, No. 1:22-cv-01842, 2023 WL 4865533, at *5 (D. Ore. July 28, 2023) ................................................................................................17

*Keys v. Humana, Inc.*, 684 F.3d 605 (6th Cir. 2012)................................................24

*Kiel v. Mayo Clinic Health System Southeast Minnesota*, No. 23-1319, 2023 WL 5000255 (8th Cir. Aug. 4, 2023) ...........................................................................16

*Lawhead v. Brookwood Mgmt. Co., LLC*, No. 5:22-CV-00886-JRA, 2023 WL 2691718 (N.D. Ohio Mar. 29, 2023) ...................................................................13

of *Kiel v. Mayo Clinic Health System Southeast Minnesota*, No. 23-1319, 2023 WL 5000255 (8th Cir. Aug. 4, 2023) .............................................................................2

*Peeples v. City of Detroit*, 891 F.3d 622 (6th Cir. 2018) ........................................21

*Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012)..........................................23

*Shabazz v. Safe Horizons*, 2011 WL 4072157 (E.D. Mich. Sept. 13, 2011)...........22

*Tagore v. United States*, 735 F.3d 324 (5th Cir. 2013) ..........................................12

*Thomas v. Rev. Bd. Of Indiana Emp. Sec. Div.*, 450 U.S. 707 (1981) ...................13

*Thomas v. Review Bd. of Indiana Employment Sec. Division*, 450 U.S. 707, 714 (1981)...........................................................................................16

*United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197 (6th Cir. 2022).............................................................................................10

*United States v. Seeger*, 380 U.S. 163 .....................................................12

*Van Gorp v. Eli Lily & Co.*, 2023 WL 5486052 (S.D. Ind. Aug. 24, 2023)............24

**Statutes**

29 C.F.R. § 1605.1 ................................................................................15

42 U.S.C. § 2000e(j) ............................................................................14

42 U.S.C. § 2000e-5(e) ........................................................................18

**Other Authorities**

Equal Empl. Opportunity Comm'n, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (March 1, 2022) ...........13

**Rules**

Fed. R. Civ. P. 8(a)(2) ..........................................................................11

Rule 12(b)(6)........................................................................................12

## <u>INDEX OF EXHIBITS</u>

1.  Plaintiff Webster's June 20 EEOC Charge

2.  Plaintiff Hanna's EEOC Charge

## **STATEMENT OF ISSUES PRESENTED**

I.      Whether Plaintiffs' Title VII Religious Discrimination Failure to Accommodate claim should be dismissed where Plaintiffs pled *prima facie* cases by alleging they (1) held sincere religious beliefs; (2) informed Defendant of the conflict between their sincerely held religious beliefs and Defendant's COVID-19 vaccine mandate; and (3) were summarily terminated for not abandoning their sincerely held religious beliefs.

Plaintiffs Answer: "No"
Defendant Answers: "Yes"
This Court should Answer: "No"

II.     Whether Plaintiff Emily Barr should be permitted to utilize the single filing/piggybacking rule where (1) Defendant had notice of potential liability arising out of its COVID-19 vaccine Mandate; (2) Plaintiff Barr pled facts to support piggybacking, and (3) Plaintiffs' EEOC charges placed Defendant on notice of the same violation alleged by Plaintiff Barr.

Plaintiffs Answer: "Yes"
Defendant Answers: "No"
This Court should Answer: "Yes"

III.    Whether Plaintiffs' Title VII and ELCRA Religious Discrimination Disparate Treatment claim should be dismissed where Plaintiffs adequately pled a *prima facie* case of disparate treatment discrimination and discovery is necessary to determine the extent of Defendant's liability.

Plaintiffs Answer: "No"
Defendant Answers: "Yes"
This Court should Answer: "No"

**INTRODUCTION**

Defendant received hundreds of religious accommodation requests from employees seeking exemption from a COVID-19 vaccine mandate in October 2021. Defendant would grant the majority of those religious accommodation requests, denying only a few requests based on Defendant's subjective standard of religiosity. Plaintiffs are among those that Defendant deemed not to meet "established criteria" for exemption.  Now, despite the Supreme Court emphasizing time and again that there is no heightened pleading standard for Title VII claims, *see Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ("use of a heightened pleading standard for Title VII cases was contrary to the Federal Rules' structure of liberal pleading requirements"), Defendant is moving to dismiss this matter on the pleadings—although Defendant converted its pleading into a Rule 56 motion for summary judgment when it exploded the factual record by attaching dozens of business records.  This Court must deny the Motion because it is premature for Defendant to move for summary judgment and Plaintiff has indisputably met the minimal pleading requirements.

On November 1, 2023, the Equal Employment Opportunity Commission ("EEOC") filed an *amicus curiae* brief in favor of the reversal of *Kiel v. Mayo Clinic Health System Southeast Minnesota*, No. 23-1319, 2023 WL 5000255 (8th Cir. Aug.

4, 2023), stating that "the threshold for pleading religious beliefs under Title VII is particularly low." The EEOC instructed:

> Assessing whether an alleged belief is religious for purposes of Title VII requires "a light touch." *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013) (internal quotation marks omitted), *abrogated on other grounds by Groff v. DeJoy*, 600 U.S. 447 (2023). It is not the province of government officials or courts to determine religious orthodoxy. *Teterud v. Burns*, 522 F.2d 357, 360 (8th Cir. 1975). That "does not mean that courts must take plaintiffs' conclusory assertions of violations of their religious beliefs at face value," but it underscores that "the burden to allege a conflict with religious beliefs is fairly minimal." *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023); *see also Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 887 (1990) ("[C]ourts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim.").

> That light touch is especially warranted on a motion to dismiss. In this posture, a court must "assum[e] all factual allegations as true and constru[e] all reasonable inferences in favor of the nonmoving party." *Usenko v. MEMC LLC*, 926 F.3d 468, 472 (8th Cir. 2019). A plaintiff need only plead "sufficient factual matter" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As this Court has said, a pleading "does not require great detail or recitation of all potentially relevant facts in order to put the defendant on notice of a plausible claim." *Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir. 2010).

> It is also inappropriate to grant a motion to dismiss where a complaint pleads facts that raise plausible inferences that may go more than one way. In *Hamilton*, for instance, this Court reversed the dismissal of a complaint that "raised plausible inferences of both employee and independent contractor status," holding that "[w]hich inference will prove to be correct is not an issue to be determined by a motion to dismiss." 621 F.3d at 819. So, too, with allegations that raise plausible inferences that a belief is religious or that it is a personal preference/political belief. ***After all, the inquiry into "whether the belief or practice asserted is religious . . . [is] factual in nature." Kent***

2

*v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Tagore*, 735 F.3d at 328 ("[E]ach case turns on its particular facts."). A jury may ultimately need to resolve the question of whether, in such circumstances, a belief is religious. *See EEOC v. Red Robin Gourmet Burgers, Inc.*, No. 2:04-cv-01291, 2005 WL 2090677, at *3 (W.D. Wash. Aug. 29, 2005) (denying summary judgment for employer who argued plaintiff's belief he could not cover his religious tattoos was merely a personal preference).

That said, courts can require "some modicum of plausible facts sufficient to create an inference that the conflict arises from some specific religious tenet or principle." *Griffin v. Mass. Dep't of Revenue*, No. 1:22-cv-11991, 2023 WL 4685942, at *6 (D. Mass. July 20, 2023). This is not a heavy burden—it simply requires pleading enough facts to connect a religious belief to the conflict with the employment requirement. *Beuca v. Wash. State Univ.*, No. 2:23-CV-0069-TOR, 2023 WL 3575503, at *2 (E.D. Wash. May 19, 2023) ("The Court declines to scrutinize Plaintiff's particular beliefs merely because he has failed to articulate them with greater clarity and precision.") *appeal docketed*, No. 23-35395 (9th Cir. June 8, 2023); *Caspersen v. Western Union, LLC*, No. 23-CV-00923-NYW-SBP, 2023 WL 6602123, at *9 (D. Colo. Oct. 10, 2023) (holding that complaint sufficiently pled religious belief).

It is therefore axiomatic that Defendant cannot succeed at this stage arguing that Plaintiffs espouse merely "personal preferences" and not religious beliefs because Plaintiffs unequivocally allege "some modicum of plausible facts sufficient to create an inference that the conflict arises from some specific religious tenet or principle."

It is also true that Plaintiff Barr can proceed in this lawsuit through a piggybacking mechanism because this Court recently validated Plaintiff Barr's piggybacking attempt under factually identical circumstances in *Collias v. MotorCity Casino*, 2023 WL 6406220, at *5 (E.D. Mich. Sept. 30, 2023), where the

Honorable Terrence G. Berg held that "applying the single filing rule to [the employee's] claim has no effect on the EEOC's ability to promote conciliation here: 13 Plaintiffs gave the EEOC opportunities to resolve their complaints through such informal channels. Given that the EEOC failed to reconcile the nearly identical charges in 13 other instances, little would be gained from having [the employee] file the same charges—it would seem to be a waste of resources." *Id*. With three other Plaintiffs in this matter giving the EEOC the same opportunity to address Plaintiff Barr's exact termination circumstances, piggybacking is certainly appropriate.

Finally, it is premature to render judgment on Plaintiffs' disparate treatment claims in a matter where Defendant found merit in hundreds of religious beliefs and yet somehow determined that Plaintiffs' religious beliefs lacked authenticity. Discovery is therefore absolutely necessary to evaluate the disparate treatment claim.

## STATEMENT OF FACTS

On July 28, 2021, Defendant announced its COVID-19 vaccination mandate requiring employees to receive the first does of the vaccine by October 20, 2021. ECF No. 1, PageID.3 at ¶10, 11.

### Plaintiff Emily Barr

Plaintiff Barr worked as a Registered Nurse for Defendant from September 2017 until her termination in October 2021. ECF No. 1, PageID.3 at ¶12. Just five

days after Defendant's COVID-19 announcement, Barr submitted a religious accommodation request stating, "my religion believes the body is a temple and should not be involved in any sacrilegious acts." **Ex. L to Def's Br.**  Barr also "had a religious practice and over this past year [became] closer to God." *Id.*  On September 24, 2021, Defendant denied Barr's request, stating "[w]e have carefully reviewed your request and determined it does not meet the established criteria for exemption." **Ex. M to Def's Br.**  Barr submitted additional information on October 4, 2021, stating "for the sake of my job I will elaborate on this very personal matter. Vaccines use aborted fetal cells in early phases of development. I am pro-life." **Ex. N to Def's Br.**  Just four days later Defendant determined, "[w]e have carefully considered the additional information you submitted and have determined that it does not meet the established criteria for exemption." **Ex. O to Def's Br.**  The denial gave Barr "until October 18, 2021 to comply," but she stuck to her religious conviction and was fired on November 11, 2021.  ECF No. 1, PageID.4 at ¶17.

### Plaintiff Carolyn Earl

On August 26, 2021, Plaintiff Earl submitted a "Request for Religious Exemption from COVID-19 Vaccination."  ECF No. 1, PageID.4 at ¶18; **Ex. C to Def's Br**.  She stated, "I am a child of God, a follower of the word . . . Christ alone is able to mandate what is right for my body." Ex. C to Def's Br.  Earl stated, "I was baptized at the age of 5. I have grown in the Spirit and learned Gods plans for me

everyday since. When God says No, I obey. He has revealed to me recently that I am no longer to believe in vaccines." *Id.*  Earl relied on Psalms 91, stating "[h]e protects me from [pestilence] not the poisons of man. I will follow the narrow path. I will obey my personal savior." *Id.*  Despite Earl outlining her sincerely held religious beliefs, Defendant denied her request, stating "[w]e have carefully considered your request and determined it does not meet the established criteria for exemption." **Ex. D to Def's Br.**  Earl was also fired after refusing to compromise her religious beliefs.  ECF No. 1, PageID.4 at ¶20, 21.

### Plaintiff Rita Hanna

Plaintiff Hanna submitted her religious exemption form on September 5, 2021, which included a signed letter from her parish.  ECF No. 1, PageID.4-5 at ¶22, 23.  Hanna was born and raised a "Chaldean Catholic" and practiced for "33 years." **Ex. E to Def's Br.**  Hanna explained, "[m]y Catholic faith allows me to use my conscience with each and everything that I put into my body, even between vaccines." *Id.*  The letter from St. Joseph Chaldean Catholic Church stated:

> By mandating her to receive the vaccine, she believes that an impediment is being placed on the exercising of her will in accordance with her intellect. I would you to consider exempting her from the mandatory vaccination required by your organization since her conscience – which is a formed conscience with her Catholic faith – is not at peace with forced vaccination.

*Id.*  Hanna's request was denied on September 27, 2021.  ECF No. 1, PageID.5 at ¶24.  On September 28, 2021, Hanna submitted an appeal stating "[b]eing a Catholic,

I have held on to my faith very closely for my entire life." **Ex. F to Def's Br.** On

October 1, 2021 Defendant denied the request, citing the reason for denial being, "***it

is not clear why your religious beliefs did not preclude you from getting prior

vaccinations***." **Ex. G to Def's Br**. On October 4, 2021, Hanna was placed on

medical leave by her physician. ECF No. 1, PageID.7, at ¶40. On December 6,

2021, Hanna was cleared to return to work, but Defendant refused to let her. She

was fired on December 15, 2021. ECF No. 1, PageID.7 at ¶42.

### Plaintiff Michael Webster

On September 4, 2021, Plaintiff Webster completed the "Request for

Religious Exemption from COVID-19 Vaccination." ECF No. 1, PageID.5 at ¶26.

> I trust in God for my safety and protection. I have attended Catholic
> Church my whole life . . . the Holy Spirit is instructing me to not receive
> this vaccine . . . Through recent years, I have deepened my relationship
> with God . . . My God has been my protector.

*Id.* at ¶27. Webster cited scripture, including Psalm 91:9-10, 9:10, 33:20-22, 56:2-

4; Proverbs 3:5-6; 1 Corinthians 6:19, 3:17; John 14:26, 16:13; Romans 8:26; Titus

3:5; **Ex. H to Def's Br.** Webster explained "[t]hrough much prayerful consideration,

my deeply held religious belief is that God, through the holy Spirit within is

instructing me to NOT receive this vaccine or any other future vaccinations and in

doing so I would be directly going against the will of God!" *Id.* Webster also stated

the following:

> Official Church teachings that demonstrate the religious beliefs on which a Catholic may refuse certain vaccines include, but are not limited to the following: . . . Concerning vaccines that are created using human cell lines derived from abortion, there is a grave responsibility to use alternative vaccines and to make a conscientious objection with regard to those which have moral problems.

**Ex. I to Def's Br.**   Despite Webster's detailed religious objections, Defendant responded, "[w]e have carefully considered your request and determined it does not meet the established criteria for exemption. Webster's September 29, 2021 appeal stated:

> I am a Catholic or more broadly a Christian . . . I affirm that this is a deeply held religious belief of mine, pursuant to my Christian faith, that my body is a temple of the Holy Spirit.  It is my God-given responsibility and requirement to protect the physical and spiritual integrity of my body against potentially unclean food and injection.

ECF No. 1, PageID.6 at ¶29. On October 13, 2021, Defendant concluded "you have not identified a specific tenet of your religious beliefs that conflicts with the vaccine requirement. For example, your religious beliefs have not prevented you from receiving other vaccinations required by Beaumont."  **Ex. K to Def's Br.**  Once again, Defendant imposed a subjective and arbitrary religious sincerity threshold test and terminated Webster on October 19, 2021. ECF No. 1, PageID.6 at ¶33. Defendant then offered Webster an "extended deadline" of November 16, 2021, but then fired him a second time on November 16, 2021. *Id.* at ¶35.

**EEOC Charges**

On June 15, 2022, Plaintiff Webster submitted an EEOC Charge alleging that

Defendant discriminated against his sincerely held religious beliefs.  **EX. Q to Def's**

**Br.**  On June 20, 2022, Webster submitted a second charge stating:

> I was notified by my employer on July 28, 2021 that it would be
> requiring all employees to the be fully vaccinated against COVID-19
> by October 20, 2021. I provided my employer with a religious
> accommodation request on September 4, 2021, stating that I have
> sincerely held religious beliefs that prevent me from receiving the
> COVID-19 vaccination. My employer denied my request for religious
> accommodation with no justification.

**Ex. 1, Plaintiff Webster's June 20 EEOC Charge.**  On June 16, 2022 Plaintiff Earl

submitted an EEOC Charge stating:

> I was notified by my employer that it would be requiring all employees
> to be fully vaccinated against COVID-19. I provided my employer with
> a religious accommodation request, stating that I have sincerely held
> religious beliefs that prevent me from receiving the COVID-19
> vaccination. While there is a reasonable accommodation that would
> mitigate the conflict between my sincerely held religious beliefs and
> the policy, my employer denied my request for religious
> accommodation with no justification. I was placed on an unpaid
> suspension on October 18, 2021, and was terminated by my employer
> on November 16, 2021.

**Ex. R to Def's Br.**  On December 11, 2021, Plaintiff Hanna submitted an EEOC

Charge stating:

> On September 5, 2021, I requested a religious accommodation from the
> COVID-19 vaccine citing my spiritual beliefs.  I included an
> endorsement of my beliefs from my pastor.  The hospital rejected my
> religious accommodation request on September 27, 2021, stating my

willingness to have the flu vaccine in the past as the reason for denial. I appealed the finding, explaining that I possessed a bona fide spiritual belief that changed during the pandemic. Without giving the appeal any consideration, the hospital summarily denied my request and communicated through hospital policy that I will be terminated as of late October. The hospital unlawfully rejected my religious accommodation based on the hospital's subjective beliefs about what my present religious beliefs were due to what they perceived my religious beliefs were in the past. The hospital therefore unlawfully dismissed my present religious beliefs.

**Ex. 2**, Plaintiff Hanna's EEOC Charge.

## STANDARD OF REVIEW

A complaint need only contain "a short and plain statement of the claims showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The Sixth Circuit reviews motions made under 12(c) "using the same standard that applies to a review of a motion to dismiss under Rule 12(b)(6)," *United Food & Com. Workers, Loc. 1995 v. Kroger Co.*, 51 F.4th 197, 202 (6th Cir. 2022). A complaint survives under Rule 12(b)(6) if it "state[s] a claim to relief that is plausible on its face" and alleges facts that, if accepted as true, sufficiently "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). This Court must "construe the complaint in the light most favorable to [Plaintiff], accept all allegations as true, and draw all reasonable inferences in favor of [Plaintiff]." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). FED. R. CIV. P. 12(d) states, "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the

pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."

## ARGUMENT

"Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other religious practices.  Rather, it gives them favored treatment, affirmatively obliging employers not 'to fail or refuse to hire or discharge any individual . . . because of such individual's 'religious observance and practice.'" *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775 (2015).  At this initial pleading stage, Plaintiffs have clearly stated viable failure to accommodate and disparate treatment claims against Defendant, including Plaintiff Barr who can lawfully piggyback on her coworkers' EEOC Charges.

## I.    THE FEDERAL PLEADING REQUIREMENT FAVOR PLAINTIFFS.

To establish a *prima facie* case for a ***failure to accommodate*** claim, an employee must show "(1) she holds a sincere religious belief that conflicts with a job requirement; (2) she has informed the employer of the conflict; and (3) she was discharged or disciplined for failing to comply with the conflicting job requirement." *Tepper v. Potter,* 505 F.3d 508, 514 (6th Cir. 2007).  Defendant attacks the first element—claiming that Plaintiffs' beliefs are not religious in nature.  ECF No. 13, PageID.100.  However, "a coincidence of religious and secular claims in no way extinguishes the weight appropriated accorded the religious one."  *Callahan v.*

11

*Woods*, 658 F.2d 679, 684 (9th Cir. 1981).  Defendant may not be convinced that Plaintiffs' beliefs were religious, but the bottom line is that Defendant ***never assessed Plaintiffs' spirituality during the religious accommodation process***.  At this stage, it is not for this Court to adjudicate a purely factual spirituality issue.

The Court's decision as to whether Plaintiffs asserted a religious belief for the purposes of Title VII protections requires "a light touch."  *Tagore v. United States*, 735 F.3d 324, 228 (5th Cir. 2013); *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1223 (9th Cir. 2023) ("the burden to allege a conflict with religious beliefs is fairly minimal."); *Emp. Div., Dep't of Hum. Res. of Or.*, 494 U.S. at 887 ("[C]ourts must not presume to determine the place of a particular belief in a religion or the plausibility of a religious claim."); *Afr. v. Com. of Pa.*, 662 F.2d 1025, 1031 (3d Cir. 1981) ("[f]ew tasks that confront a court require more circumspection than that of determining whether a particular set of ideas constitutes a religion . . . we must avoid any predisposition toward conventional religions so that unfamiliar faiths are not branded mere secular beliefs."); *EEOC v. Consol Energy, Inc*., 860 F.3d 131, 142 (4th Cir. 2017) ("[i]t is not [employer's] place . . . nor [the court's] to question the correctness or even the plausibility of [plaintiff's] religious understandings."). That is because it is well established that an individual's testimony about his religious beliefs "must be given great weight" and is alone adequate to demonstrate sincerity.  *United States v. Seeger*, 380 U.S. 163, 184 (1965).

12

Here, the Court cannot be the arbiter of Plaintiffs' religiosity.  Indeed, the business records referenced in the Complaint demonstrate that Defendant's conduct is a *per se* violation of Title VII because Defendant gleaned from Plaintiffs having been vaccinated previously with vaccines other than the COVID-19 vaccine that Plaintiffs had "inconsistent" religious beliefs.  But of course, mere inconsistency is not a grounds to reject a religious belief as valid.  *Thomas v. Rev. Bd. Of Indiana Emp. Sec. Div.*, 450 U.S. 707, 714 (1981) (holding that religious beliefs "need not be acceptable, logical, consistent, or comprehensible to others" to merit protection.); *Lawhead v. Brookwood Mgmt. Co., LLC*, 2023 WL 2691718, at *4 (N.D. Ohio Mar. 29, 2023) ("[N]o court should inquire into the validity or plausibility of the beliefs; instead, the task of a court is to decide whether the beliefs professed by [an employee] are sincerely held and whether they are in [the believer's] own scheme of things, religious."); *Callahan*, 658 F.2d at 685 (holding that the plaintiff's belief was religious even where his "interpretation of the scriptures may differ from the meaning members of his church generally find in that text."); *Emp. Div., Dep't of Hum. Res. of Or.*, 494 U.S. at 887 ("[I]t is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds.").  Likewise, the EEOC, the "the agency of the United States charged with the administration, interpretation, an enforcement of Title VII" (*Equal Emp. Opportunity Comm'n v. Publix Super Markets, Inc.*, 481 F.

Supp. 3d 684, 689 (M.D. Tenn. 2020)), states "[t]he definition of religion is broad and protects beliefs, practices, and observances with which the employer may be unfamiliar.")[1]; 42 U.S.C. § 2000e(j) ("[t]he term 'religion' includes all aspects of religious observances and practice, as well as belief."). The EEOC adds, "*religious practices . . . include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.*" 29 C.F.R. § 1605.1. A religious belief may overlap with a personal preference or political belief, but that does not necessarily set the religious belief "outside the scope of Title VII's religious protections." EEOC, Compliance Manual § 12-I.A.1 Overview (Jan. 15, 2021) ("Compliance Manual"), https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination; *Gadling-Cole v. W. Chester Univ.*, 868 F. Supp. 2d 390, 397 (E.D. Pa. 2012) ("Title VII claims for religious discrimination are cognizable for topics which overlap both the religious and political spectrum, such as abortion, as long as the claims are based on a plaintiff's *bona fide* religious belief.").

Defendant does not argue that Plaintiff's beliefs were insincere, but instead alleges that Plaintiff's beliefs were not "religious" in nature. ECF No. 10, PageID.97. First, Defendant cites to *Fallon v. Mercy Cath. Med. Ctr. Or Se. Pennsylvania,* 877 F.3d 487, 492 (3d Cir. 2017) for the proposition that a person's

---

[1] EEOC Guidance, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, at K.12.

beliefs must "be part of a broader religious faith." *Id.* However, *Fallon* is easily distinguishable. The *Fallon* plaintiff was a hospital employee who submitted a "twenty-two page essay" wherein he stated that "the influenza vaccine has not been shown to be effective, its benefits are grossly inflated, its risks are dangerously downplayed, [and] the lethality of the virus is grossly exaggerated." *Fallon v. Mercy Catholic Med. Ctr. Of Southeastern Pa.,* 200 F. Supp. 3d 553, 557 (E.D. Pa. 2016). Prior to appeal, the trial court labelled Fallon's request "a lengthy editorial on contentious social issues," wherein the plaintiff "[disputed] the effectiveness of the flu vaccine and the motives of the pharmaceutical industry." *Id.* The *Fallon* plaintiff *did not "claim that his reasons for refusing to be vaccinated are based on religious beliefs* . . . To the contrary, [his] stated opposition to vaccinations [was] *entirely* personal, political, sociological, and economic." *Id.* at 561-63. The Third Circuit agreed and held "Fallon's beliefs do not occupy a place in his life similar to that occupied by a more traditional faith." *Fallon*, 877 F.3d at *491-93. On the other hand, here it is evident in the Complaint that each Plaintiffs' religious accommodation request mentioned specific religious beliefs, scripture, endorsement of religious figures, and state why the belief was based on religious tenets.

Defendant argues that "courts have routinely held that political or moral beliefs about vaccines are not religious." ECF No. 13, PageID.99. However, on November 1, 2023, the EEOC filed an *amicus curiae* brief in *Kiel*, 2023 WL

5000255, which reflects the latest and most up-to-date agency policy.  The *Kiel* defendant adopted a vaccine policy that required its employees to "receive the COVID-19 vaccination, receive an exemption from the vaccine requirement, or be terminated from their positions." *Id.* at *1.  The plaintiffs, Licensed Practical Nurse Shelly Kiel and Emergency Medical Technician Kenneth Ringhofer, "refused the vaccine based on their sincerely held religious beliefs." *Id.*  Ms. Kiel alleged that "she cannot put impure or dangerous substances into her body because it is a Temple of the Holy Spirit." *Id.* at *2.  The trial court dismissed her discrimination and failure to accommodate claims, holding that "she did not adequately plead a sincerely held religious belief." *Id.* at *1.  Mr. Ringhofer alleged that the vaccine is "putting in something that is unknown into [his] body.  God asked [him] not to do that." *Id.* at *9.  Mr. Ringhofer further alleged that his "immune system," given to him by God, "is taking care of [him]." *Id.*  The court dismissed plaintiff's claims, holding "his opposition to the vaccine is a personal medical judgment, not a religious belief." *Id.* at *1.  However, the EEOC's *amicus brief* reiterated well-established principles of religious accommodation law, including that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others," *Thomas*, 450 U.S. at 714 and "[j]udges are ill-equipped to examine the breadth and content of an avowed religion; [they] must avoid any predisposition toward conventional religions so that unfamiliar faiths are not branded mere secular beliefs." *Africa*, 662 F.2d at 1031.

16

The EEOC then opined that religious beliefs against vaccination are legally sufficient when they hinge on a "***religious belief not to interfere with the function of the human immune system***," *citing Kather v. Asante Health System*, No. 1:22-cv-01842, 2023 WL 4865533, at *5 (D. Ore. July 28, 2023).

> Kiel and Ringhofer alleged beliefs, based on their religions, that their bodies are temples to the Holy Spirit   . . . ***Courts can consider allegations involving the sanctity of the human body in inferring that beliefs are religious*** . . . Kiel and Ringhofer both alleged beliefs opposing the vaccine based on the sanctity of their bodies . . . The court discounted these beliefs by concluding that they expressed personal preferences, but ***a religious belief may overlap with a personal preference or political belief.***

The EEOC stressed that even where medical concerns call into question whether a "motive for seeking a[n] . . . exemption was purely religious in nature," there is still a factual question of "whether [] refusal . . . was also, at least in part, due to [] proclaimed religious beliefs." *Id.* at 26.  Meaning, there is a factual question as to Plaintiffs' religious beliefs "***[a]nd factual questions . . . are for juries***." *Id.*

## II.   PLAINTIFF BARR CAN PIGGYBACK ON EEOC CHARGES.

Defendant argues that "[j]udgment on the pleadings is warranted for Barr [because] . . . she failed to exhaust administrative remedies."  ECF No. 13, PageID.104.  That is completely wrong.  While filing an EEOC charge is normally a prerequisite to a Title VII lawsuit, the Sixth Circuit expressly recognizes the "single filing rule" as an exception.  *E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 840 (6th Cir. 1994); *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 197 (6th Cir.

1995) ("The single filing rule serves to prevent a wooden application of the administrative charge requirement where the ends of the requirement have already been satisfied"). In *Howlett*, for example, the Sixth Circuit reasoned that a "charge will be adequate to support piggybacking under the single filing rule if it contains sufficient information to notify prospective defendants of their potential liability and permit the EEOC to attempt informal conciliation of the claims before a lawsuit is filed." *Howlett*, 49 F.3d at 195. If the work unit is larger, "there must be some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim." *Id*.

Defendant argues that "Hanna and Earl's EEOC charges do not mention other employees at all, and the Webster charge says only that other employees *did* receive accommodations. ECF No. 13, PageID.105-06. Defendant's arguments are totally false. In fact, Plaintiff Earl's EEOC charge specifically states "I was notified by my employer that it would be **requiring all employees to be fully vaccinated against COVID-19.**" Ex. R to Def's Br. Plaintiff Webster's charge stated, "I was notified by my employer on July 28, 2021 that it would be **requiring all employees to be fully vaccinated against COVID-19** by October 20, 2021." Ex 1, Michael Webster's EEOC Charge. And it is abundantly clear that Plaintiffs Hanna, Earl and Webster all suffered identical harm when they were terminated at the same time as Plaintiff Barr, by the same decision-makers, for the very same reason.

18

Defendant's piggybacking attack must fail because Plaintiff Earl and Plaintiff Webster submitted EEOC charges that aligned with a template for religious accommodation charges provided by the EEOC that included language broad enough to give "some indication that the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim." *Howlett,* 49 F.3d at 195. Furthermore, Plaintiff Earl and Webster provided "sufficient information to notify" Defendant of their potential liability "and permit the EEOC to attempt informal conciliation of the claims before a lawsuit is filed." *Id*. Notably, Defendant ***does not dispute that it was*** notified of Plaintiff Barr's religious accommodation request and that it received timely EEOC charges from the other three plaintiffs in this case. Defendant instead makes a frivolous argument when it ignores Judge Berg's recent decision upholding piggybacking under identical circumstances in *Collias v. MotorCity Casino*, 2023 WL 6406220, at *5 (E.D. Mich. Sept. 30, 2023) and cites *Clear Sky Car Wash, LLC v. City of Chesapeake, Va.*, 910 F. Supp. 2d 861, 833 (E.D. Va. 2012) for the proposition that "a party that admittedly has not exhausted administrative remedies must plead facts plausibly demonstrating exhaustion is excused." ECF No. 13, PageID.105. But hold the phone—*Clear Sky* does not mention Title VII's piggybacking rule; it involved a "right of way" acquisition proposed by the Virginia Department of Transportation that is irrelevant here. *Clear Sky*, 910 F. Supp. 2d. at *866. In fact, the three cases

cited by Defendant ***do not involve Title VII or piggybacking whatsoever***.

Plaintiff is not required to plead precisely "whose charge she is purportedly piggybacking on" nor is she required to state "factual reason[s] why conciliation would have been futile." ECF No. 13, PageID.105.  Rather, Plaintiff is permitted to piggyback off any of the named Plaintiff's whose EEOC charges "contains sufficient information to notify prospective defendants of their potential liability and permit the EEOC to attempt informal conciliation of the claims before a lawsuit is filed" (citing *Howlett*, 49 F.3d at 195), which all of Plaintiffs' charges accomplish.  And Plaintiff Barr specifically pled facts that support piggybacking, including:

1. Defendant announced its COVID-19 vaccination mandate on July 28, 2021;

2. The deadline for employees to receive the first does of the vaccine was October 20, 2021;

3. Plaintiff Barr worked as a Registered Nurse for Defendant from September 2017 until her termination in October 2021;

4. Plaintiff Barr submitted a religious accommodation request on September 3, 2021; and

5. Defendant denied Plaintiff Barr's religious accommodation request on October 14, 2021.

ECF No.1, PageID.3-4.

Finally, Defendant challenges the "substantively similar" requirement of Plaintiff's single filing claim without citing supporting law.  Defendant claims that Plaintiffs' Hanna, Earl, and Webster have "body as a temple" objections to the vaccine while Plaintiff Barr does not.  Defendant states that Plaintiff is in an

20

"inescapable quandary" because her religious accommodation request relied on different beliefs than the other three Plaintiffs.  ECF No.13, PageID.106.  That is absurd.  In *Collias*, 2023 WL 6406220, at *4, this Court acknowledged that a complaint was "substantively related" so as to permit piggybacking where (1) the employee requested religious accommodation after Defendant issued a mandatory vaccine policy; (2) the employee was denied the accommodation; (3) the employee was subsequently terminated; (4) the employee submitted a request for religious accommodation through the employer's internal procedure; and (5) the employee's request referenced Title VII's protections for religious employees and "cited religious-based concerns for his objections."  *Id.*  Meaning, *Collias* court did not require that plaintiffs share perfectly identical religious beliefs.  Similarly, *Peeples v. City of Detroit*, 891 F.3d 622, 633 (6th Cir. 2018), a case cited by Defendant, the Sixth Circuit held that "national origin" was sufficiently similar to support a single filing claim.  Defendant has not pointed to a single case in the Sixth Circuit where piggybacking was denied because the plaintiffs did not have identical religious beliefs—which by the way are like fingerprints because ostensibly no two religious beliefs are exactly the same.  Defendant's arguments are hardly compelling.  There is no argument that Defendant was not fully apprised of the factual and legal basis of Plaintiff Barr's claims after it received the other three EEOC Charges.  After all, the EEOC itself asked prospective claimants to fill in the blanks on a template

religious accommodation denial charge and then submit the charge.  Reconciliation was not even practical here where the EEOC did not investigate any of Plaintiffs' charges and simply issues right to sue letters after over six months of the charges sitting idle.  Ultimately, there is no debate that Defendant (a) knew of its Title VII liability exposure from the at least three timely filed EEOC charges; and (b) did nothing to remedy the damages of any former employee who was terminated. Plaintiff Barr's claims belong in this Court and piggybacking is entirely appropriate.

## III.    PLAINTIFFS' DISPARATE TREATMENT CLAIMS ARE VIABLE.

Defendant argues that Plaintiffs "seek[] to recast their failure to obtain religious accommodations as religion-based disparate treatment."  ECF No. 13, PageID.107.  However, "[b]oth Title VII and ELCRA, Mich. Comp. Laws § 37.2101 *et seq.*, prohibit an employer from discriminating against an employee with respect to compensation, terms, conditions, or privileges of employment based on that individual's religion." *Shabazz v. Safe Horizons*, 2011 WL 4072157, at *6 (E.D. Mich. Sept. 13, 2011) (citing 42 U.S.C. § 2000e-2(a)(1); MICH. COMP. LAWS § 37.2022(a).  To make out a *prima facie* case of disparate treatment under Title VII and ELCRA, Plaintiffs must establish they (a) belonged to a protected class; (b) suffered an adverse employment action; (c) were qualified for the position; and (d) were treated differently from similarly situated employees of an unprotected class for the same or similar conduct. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339,

347 (6th Cir. 2012).  At the pleading stage, Plaintiffs need not commit "to a particular evidentiary framework." *Brown v. MGM Grand Casino*, No. 22-128978, 2023 5489023, at \*4 (E.D. Mich. Aug. 24, 2023); *Serrano v. Cintas Corp.*, 699 F.3d 884, 898 (6th Cir. 2012) ("plaintiff is not required to plead whether she intends to employ the *McDonnell Douglas* . . . burden shifting framework.").  Here, the only real question mark is whether Plaintiffs were treated differently from similarly situated employees.  But there is potentially a mountain of evidence that they were because Defendant accommodated the religious beliefs of hundreds of employees and yet for some reason found that Plaintiffs' religious beliefs were insufficient.  There really is no question whether disparate treatment occurred—it clearly did.  The question is what religious beliefs passed muster?  Plaintiffs need discovery to find that out.

### A.     <u>Plaintiffs Were Treated Worse Than Similarly Situated Workers</u>.

Defendant argues against disparate treatment because Plaintiffs did not identify the similarly situated employees treated more favorably.  ECF No. 13, PageID.109.  But Plaintiffs alleged that workers outside of Plaintiffs' protected class were treated more favorably, *i.e.*, "Defendant allowed other unvaccinated employees without Plaintiffs' same religious beliefs to be exempted from Defendant's vaccine mandate policy."  ECF No. 1, PageID.14-15 ¶86, ¶98.  Defendant claims that Plaintiffs "do not allege facts suggesting that *anyone*—religious or not—who failed to obtain an exemption from the policy was nonetheless *not* terminated under the

generally-applicable policy." ECF No. 13, PageID.109. Plaintiffs cannot at this juncture know who exactly was treated more favorably—but they know that others were. Plaintiffs still have a right to investigate whether Defendant possessed discriminatory criterion for what constitutes a religious belief.

### B.    **Plaintiffs Plead ELCRA Disparate Treatment Claims.**

Defendant argues that Plaintiff's Title VII and ELCRA disparate treatment claims are just a failure to accommodate claim in disguise. *See* ECF No. 14, PageID.107. That is false. Plaintiffs ***do not allege an ELCRA failure to accommodate claim***, but rather an ELCRA ***religious discrimination—disparate treatment*** claim. *See* ECF No.1, PageID.14. Defendant cites to *DiFranco v. City of Chicago,* 589 F. Supp. 3d 909 (N.D. Ill. 2022) and *Van Gorp v. Eli Lily & Co.*, 2023 WL 5486052 (S.D. Ind. Aug. 24, 2023), but those cases involve ADA disputes. Defendant ignores *Brown*, 2023 WL 5489023, which reasoned that a "complaint must simply allege 'sufficient factual content from which a court . . . could draw the reasonable inference…that discrimination occurred.'" *Id.* at \*4 (citing *Keys v. Humana, Inc.*, 684 F.3d 605, 609-10 (6th Cir. 2012). *Brown* held that allegations identical to those in this case at the pleading stage support a disparate treatment claim. *Id.* And *Brown* relied on the allegation that "[plaintiffs] tried to get religious accommodations, but MGM rejected the requests and fired them while other employees—with different religions—were permitted to work without the COVID-

24

19 vaccine." *Id.*   Likewise here, Plaintiffs pled they are members of a ***protected class***.  *See* ECF No.1, PageID.13-14 ¶84, ¶92.  Moreover, there is no dispute Plaintiffs were qualified for their positions.  Plaintiffs' disparate treatment claims arise out of the allegation that they were treated less favorably than similarly-situated employees with different religious beliefs.  ECF No. 1, PageID.14 at ¶86; ECF No. 1, PageID.15 at ¶99.  Because this Court must accept Plaintiff's allegations as true at the pleading stage, Plaintiff has adequately pled disparate treatment claims.

## <u>CONCLUSION</u>

For the foregoing reasons, this Honorable Court should deny Defendant's Motion for Judgment on the Pleadings.

Respectfully Submitted,

HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
*Attorney for Plaintiffs*
340 Beakes St. Ste. 125
Ann Arbor, MI 48104
Dated: December 12, 2023              (844) 487-9484

## **PROOF OF SERVICE**

The undersigned certifies that a copy of Plaintiffs' Response to Defendant's

Motion to Dismiss was served upon the attorney(s) of record for all parties via

CM/ECF on this December 12, 2023:

Eric J. Pelton (P40635)
Thomas J. Davis (P78626)
*Attorneys for Defendant*
280 N. Old Woodward Ave., Suite 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com
tdavis@khvpf.com


*/s/ Colin H. Wilkin*
Colin H. Wilkin, Attorney

26